# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF WISCONSIN

### MILWAUKEE DIVISION

---

ESTABLISHMENT INSPECTION OF:

**AMERICAN INDUSTRIAL SALES, LLC**   Case No. 19-M-119
**242 S. Pearl St.**
**Berlin, WI 54923**

---

### APPLICATION FOR INSPECTION WARRANT
### UNDER THE OCCUPATIONAL SAFETY
### AND HEALTH ACT OF 1970

---

To the Honorable United States Magistrate Judge: David E. Jones

**DAVID SCHOTT,** a duly authorized Compliance Safety and Health Officer ("CSHO") of

the Occupational Safety and Health Administration ("OSHA"), United States Department of

Labor, apply for an inspection warrant, pursuant to Section 8 of the Occupational Safety and Health

Act of 1970 (29 U.S.C. 651 et seq.), hereinafter referred to as the "Act," and the Regulations issued

pursuant thereto, for the health and safety inspection and investigation of the place of business of

**AMERICAN INDUSTRIAL SALES, LLC** (hereinafter "AIS"), **242 S. Pearl St., Berlin, WI**

**54923.**

The undersigned, being duly sworn, deposes and says:

1. The aforesaid worksite comprises the workplace of employees who are employed

by an employer, believed to be engaged in a business affecting commerce, and is subject to the

requirements of the Act.

1

2.	This application is based upon my review of OSHA records and reports and information learned when my office attempted to conduct an inspection at the establishment known as AIS.

3.	The desired inspection is part of an inspection and investigation program, as set forth in greater detail below, designed to assure compliance with the Act and is authorized by Section 8(a) of the Act.

4.	On March 11, 2019,[1] the Appleton Area Office received an online complaint from a complainant who was knowledgeable of specific alleged hazardous conditions at AIS' worksite and who indicated that he/she did not want his/her name revealed. A typewritten transcript of this non-formal complaint was prepared on an OSHA Form 7 (attached hereto as Exhibit A) summarizing the hazards which were reported by the Complainant to wit:

a.	Four inch angle grinders are being used without guards resulting in injuries in the north building;

b.	Safety gates on two of three scissor lifts are missing in the north building;

c.	The safety switch is bypassed on the controls for one of the three scissors lifts located in the north building;

d.	Employees are utilizing an articulating Genie boom lift without wearing harnesses in the north building;

e.	Forklifts located in the north building are being utilized with the back-up alarms removed and the brakes not functioning properly;

f.	Forklift operators in the north building are not trained and certified;

g.	The roll-former located on the north west wall of the north building does not have any form of machine guarding;

h.	The shear located in the north building is not properly guarded to prevent employees from accessing the danger areas;

---

[1] CSHO Isaiah Skenandore contacted the complainant on March 27, 2019, and clarified some of the information received on March 11, 2019.

2

i. An employee suffered an injury after their hands got caught in an unguarded Iron Worker located in the north building;

j. Lifting slings on forklifts located in the north building are damaged and not being removed from service. Slings have red thread showing and are tied together;

k. Electrical junction boxes and panels on the north wall of the north building are missing covers; and

l. Flexible 480 volt cords located in the north building are damaged.

5. In accordance with OSHA Directive CPL 02-00-160 - "Field Operations Manual," Chapter 9 "Complaint and Referral Processing" (Exhibit B),[2] Area Director Robert Bonack determined that complaint items (a), (g), (h) and (i) met the criteria for an on-site inspection as set forth at Chapter 9, pg. 9-3, para. C.5., as these complaint items identify hazards covered by a national emphasis program ("NEP") (see attached Exhibit C - OSHA Instruction CPL 03-00-003 entitled "National Emphasis Program on Amputations"). Complaint item (a) states that "Four inch angle grinders are being used without guards resulting in injuries in the north building." Complaint item (g) states, "The roll-former located on the north west wall of the north building does not have any form of machine guarding." Complaint item (h) states, "The shear located in the north building is not properly guarded to prevent employees from accessing the danger areas." Complaint item (i) states, "An employee suffered an injury after their hands got caught in an unguarded Iron Worker located in the north building." This emphasis program specifically states that Compliance Safety and Health Officers should consider, in their investigations, machinery and equipment that could cause amputations. Exhibit C, pg. 7, para. C.2. As discussed more fully below, angle

---

2 Exhibit B, which became effective on April 22, 2011, is a federal OSHA instruction which establishes policies and procedures for handling complaints relating to workplace safety and health conditions. A complaint inspection is an on-site examination of an employer's worksite that is initiated primarily as a result of a complaint; is conducted by an OSHA compliance officer at the employer's worksite, and meets at least one of the criteria identified in Chapter 9, Section I.C. "Criteria Warranting an Inspection" of Exhibit B.

3

grinders, roll-formers shears, and iron workers are all machinery that could cause employee amputations.

6.     AIS is believed to be engaged in the business of remanufacturing industrial equipment including painting and coating equipment, conveyors, waste treatment systems, industrial washers and ovens, HVAC systems, and other industrial components, which OSHA has determined is categorized as the North American Industry Classification System ("NAICS") No. 423830 – Industrial Machinery Equipment Manufacturers.  Although this NAICS code does not denote a category of industry with a high incidence of amputations (See Exhibit C, Appendix B, pgs. B-1 – B-6; Exhibit C, Appendix C, pg. C-1), Complainant One's description includes machinery and equipment that could cause amputations.

7.     I know from my training and experience that the conditions complained of in paragraph 4, items (a), (g), (h), and (i) may be in violation of the Act, specifically the failure to provide employees with a workplace free of recognized hazards, as well as the regulations issued pursuant to the Act, including, but not limited to 29 C.F.R. § 1910.212(a)(1) (machine guarding); 29 C.F.R. § 1910.212(a)(3)(ii) (point of operation guarding); 29 C.F.R. § 1910.147 (control of hazardous energy); 29 C.F.R. § 1910.243 (Guarding of portable powered tools).

8.     Area Director Robert Bonack also determined that complaint items (e), (f), and (j) met the criteria for an on-site inspection as set forth in Exhibit B, Chapter 9, pg. 9-3, para. C.5., as these complaint items identify hazards covered by a local emphasis program ("LEP") (see attached Exhibit D - OSHA Instruction CPL 04-00 (LEP 002) entitled "[LEP] on Powered Industrial Vehicles") ("PIV") (indicating OSHA inspects "[a]ny referral or complaint classified by OSHA as 'serious' which alleges a hazard or a condition that may be a violation of the PIV standard or a potentially fatal 'struck/caught/fall hazard' associated with the operation of a powered industrial

vehicle (e.g., struck by falling load, struck against, caught between, caught in, or fall hazard) in general industry or construction will be activated for inspection"). The definition of PIV includes forklift trucks. Exhibit D, pg. 2, IV. Definitions. Complaint item (e) states, "Forklifts located in the north building are being utilized with the back-up alarms removed and the brakes not functioning properly." Complaint item (f) states, "Forklift operators in the north building are not trained and certified." Complaint item (j) states, "Lifting slings on forklifts located in the north building are damaged and not being removed from service. Slings have red thread showing and are tied together." These hazards fall under the PIV LEP.

9.      I know from my training and experience that the conditions complained of in paragraph 4, items (e), (f), and (j) may be in violation of the Act, specifically the failure to provide employees with a workplace free of recognized hazards, as well as the regulations issued pursuant to the Act, including, but not limited to 29 C.F.R. § 1910.178(q)(6) (industrial trucks shall not be altered); 29 C.F.R. § 1910.178(p)(1) (remove forklift from service if found to need repair); 29 C.F.R. § 1910.178(l)(1)(i) (power industrial trucks operator training and evaluation); 29 C.F.R. § 1910.184 (Slings).

10.      Finally, Area Director Robert Bonack determined that complaint items (b), (c), and (d) met the criteria for an on-site inspection as set forth in Exhibit B, Chapter 9, pg. 9-3, para. C.5., as these complaint items identify hazards covered by another LEP (see attached Exhibit E - OSHA Instruction CPL 04-00 (LEP 008) entitled "[LEP] for Fall Hazards in Construction and General Industry" (indicating OSHA shall inspect "….complaints alleging serious fall hazards"). Complaint item (b) states, "Safety gates on two of three scissor lifts are missing in the north building." Complaint item (c) states, "The safety switch is bypassed on the controls for one of the three scissors lifts located in the north building." Complaint item (d) states, "Employees are

5

utilizing an articulating Genie boom lift without wearing harnesses in the north building." These complaint items fall within the Fall Hazards LEP.

11.     I know from my training and experience that the conditions complained of in paragraph 4, items (b), (c), and (d) may be in violation of the Act, specifically the failure to provide employees with a workplace free of recognized hazards, as well as the regulations issued pursuant to the Act, including, but not limited to 29 C.F.R. § 1910.67(c)(2)(v) (Fall protection used when working from aerial lift); and 19 C.F.R. § 1910.27(a) (scaffold and rope decent systems).

12.     Nicholas Thoma, AIS's owner, and an official representative of AIS, informed CSHO Isaiah Skenandore on April 2, 2015, that company policy does not permit warrantless inspections by OSHA.  Therefore, the Area Director and the Regional Solicitor of the U.S. Department of Labor believe that the issuance of a pre-inspection warrant is necessary and appropriate and in accordance with 29 C.F.R. § 1903.4(b).

13.     The inspection and investigation will be conducted by one or more compliance officers designated by the Secretary of Labor, United States Department of Labor, to be his authorized representative(s), pursuant to proper and reasonable administrative standards contained in regulations duly issued by the Secretary under authorization granted in the Act and found in 29 C.F.R. § 1903.

14.     The inspection and investigation will be conducted during regular working hours, within reasonable limits, and in a reasonable manner.  The Compliance Officer(s) credentials will be presented to the employer, and the inspection and investigation will be commenced as soon as practicable after the issuance of this inspection Warrant and will be completed with reasonable promptness, in accordance with Section 8(a) of the Act.

15.     The requested safety inspection and investigation is limited to the following:

6

- those areas and/or conditions specified in paragraph 4 above, items (a), (b), (c), (d), (e), (f), (g), (h), (i), and (j) of this Application;

- any hazardous work areas, procedures and/or working conditions where work is performed or permitted to be performed by employees of the employer within the plain view of the Compliance Officer(s) during the course of the inspection; and

- all pertinent conditions, structures, machines, apparatus, devices, equipment, materials and all other things therein, including a review of records required by the Act and/or directly related to the purpose of the inspection (but not including medical records as defined in 29 C.F.R. § 1910.1020(c)(6)(i)); and (1) related to the hazardous safety and/or health conditions referred to in paragraph 4 above [items (a), (b) (c), (d), (e), (f), (g), (h), (i), (j)] of this Application For Inspection Warrant, (2) bearing on whether this employer is furnishing to its employees employment and a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees, and (3) whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.

17.     The compliance officer(s) are authorized by Section 8(a) (2) of the Act to inspect and investigate the place of employment and to question privately any employer, owner, operator, agent, or employee of the establishment.   By regulation at 29 C.F.R. § 1903.7 and OSHA Instructions CPL 02-00-160, Chapter 3, (OSHA Instructions attached hereto as Exhibit F, pgs. 3-1 – 3-25), the compliance officer(s) are further authorized to take environmental samples,

7

including samples taken by personal sampling devices attached to employees, and to take or obtain photographs and/or videotapes related to the purpose of the inspection.

18.    The compliance officer(s) may be accompanied by a representative of the employer and a representative authorized by his employees, pursuant to Section 8(e) of the Act.

19.    A return will be made to the Court at the completion of the inspection and investigation.

20.    The authority for issuance of the inspection warrant is Section 8(a) of the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq.), and the regulations issued pursuant thereto in 29 C.F.R. §§ 1903.3 and 1903.4. *See Marshall v. Barlow's Inc.,* 436 U.S. 307 (1978); *Matter of Establishment Inspection of Kelly-Springfield Tire Co.,* 13 F.3d 1160 (7th Cir. 1994); *Matter of Midwest Instruments,* 900 F.2d 1150 (7th Cir. 1990); *In re Cerro Copper Products Company,* 752 F.2d 280 (7th Cir. 1985); *Burkart Randall Div. of Textron, Inc. v. Marshall,* 625 F.2d 1313 (7th Cir. 1980); *Stoddard Lumber Co. Inc. v. Marshall,* 627 F. 2d 984 (9th Cir. 1980); *Matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335 (7th Cir. 1979) *cert. denied,* 444 U.S. 884 (1979).

Dated: __6/3/2019__

_____

**DAVID SCHOTT**
**Assistant Area Director**
**Appleton Area Office**
**U.S. Department of Labor**
**Occupational Safety and Health**
**Administration**

8

Sworn to before me and subscribed in my presence on this 3rd day of June 2019.

**DAVID E. JONES**
**United States Magistrate Judge**

**U.S. Department of Labor**
Occupational Safety and Health Administration



## Notice of Alleged Safety or Health Hazards

|  | Complaint Number | 1434287 |
|---|---|---|

| Establishment Name | American Industrial Sales LLC | | |
|---|---|---|---|
| Site Address | 242 S. Pearl St.,<br>Berlin, WI 54923 | | |
| | Site Phone | | Site FAX | |
| Mailing Address | N231 Hwy 49 N , PO Box 208<br>Berlin, WI 54923 | | |
| | Mail Phone | 920-361-5208 | Mail FAX | |
| Management Official | | | Telephone | |
| Type of Business | Fabrication | | |
| Primary SIC | | Primary NAICS | 423830 - Industrial Machinery and Equipment Merchant Wholesalers |

**HAZARD DESCRIPTION/LOCATION.** Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Item a: Four inch angle grinders are being used without guards resulting in injuries in the north building.

Item b: Safety gates on two of three scissor lifts are missing in the north building.

Item c: The safety switch is bypassed on the controls for one of the three scissors lifts located in the north building.

Item d: Employees are utilizing an articulating Genie boom lift without wearing harnesses in the north building.

Item e: Forklifts located in the north building are being utilized with the back-up alarms removed and the brakes not functioning properly.

Item f: Forklift operators in the north building are not trained and certified.

Item g: The roll-former located on the north west wall of the north building does not have any form of machine guarding.

Item h: The shear located in the north building is not properly guarded to prevent employees from accessing the danger areas.

Item i:  An employee suffered an injury after their hands got caught in an unguarded Iron Worker located in the north building.

Item j:  Lifting slings on forklifts located in the north building are damaged and not being removed from service.  Slings have red thread showing and are tied together.

Item k:  Electrical junction boxes and panels on the north wall of the north building are missing covers.

Item l:  Flexible 480 volt cords located in the north building are damaged.

# EXHIBIT B



**U.S. DEPARTMENT OF LABOR**    **Occupational Safety and Health Administration**

| **DIRECTIVE NUMBER:** CPL-02-00-160 | **EFFECTIVE DATE:** 08/02/2016 |
|---|---|
| **SUBJECT:** Field Operations Manual (FOM) | |

## ABSTRACT

| | |
|---|---|
| **Purpose:** | To provide OSHA offices, State Plan programs and federal agencies with policy and procedures concerning the enforcement of occupational safety and health standards. Also, this instruction provides current information and ensures occupational safety and health standards are enforced with uniformity. |
| **Scope:** | OSHA-wide. |
| **References:** | See Chapter 1, Section III. |
| **Cancellations:** | OSHA Instruction CPL 02-00-159, Field Operations Manual, issued October 1, 2015. |
| **State Impact:** | Notice of Intent and Equivalency required. See Chapter 1, Section VI. |
| **Action Offices:** | National, Regional, and Area Offices. |
| **Originating Office:** | Directorate of Enforcement Programs (DEP). |
| **Contact:** | Director, Office of General Industry and Agricultural Enforcement U.S. Department of Labor – OSHA 200 Constitution Avenue, N.W., Room N-3119 Washington, DC 20210 202-693-1850 |

By and Under the Authority of

David Michaels, PhD, MPH
Assistant Secretary

ABSTRACT-1

## Executive Summary

This instruction provides current information and guidance to the Occupational Safety and Health Administration (OSHA) national, regional, and area offices concerning OSHA's policy and procedures for implementing inspections, issuing citations and proposing penalties.

### Significant Changes for 2016 Update

- ➢ Updated *Table of Contents* section.
- ➢ Updated *References* section.
- ➢ Updated *General Penalty Policy* in Chapter 6, Section I.
- ➢ Updated *Civil Penalties* to include the "Inflation Adjustment Act" in Chapter 6, Section II.A.1-5.
- ➢ Updated *Minimum Penalties* in Chapter 6, Section II.C.1&2.
- ➢ Updated *Maximum Amounts for Civil Penalties* in Chapter 6, Table 6-1.
- ➢ Updated *Serious Violation & GBP* in Chapter 6, Section III.A.4.a&c.
- ➢ Updated GBP for *Serious Violations* in Chapter 6, Table 6-2.
- ➢ Updated *Other-Than-Serious Violations & GBP* in Chapter 6, Section III.A.5.b.
- ➢ Updated GBP for *Other-Than-Serious Violations* in Chapter 6, Table 6-3.
- ➢ Updated Maximum *Penalty Adjustment Factor* for Size in Chapter 6, Section III.B.1.a.
- ➢ Updated *Good Faith Reduction* policy in Chapter 6, Section III.B.3.a&b.
- ➢ Updated *Size Reduction* for small employers in Chapter 6, Section III.B.4.a.
- ➢ Updated Percent Reduction for *Size Reduction* in Chapter 6, Table 6-4.
- ➢ Updated *Penalty Adjustment Application* in Chapter 6, Section III.B.5.
- ➢ Updated *Sample of Moderate Gravity Penalty Comparison Summed versus Serial Calculation* in Chapter 6, Table 6-5.
- ➢ Updated Comments for *Quick-Fix Penalty Reduction Factor* in Chapter 6, Table 6-6.
- ➢ Updated *Repeated Violations* in Chapter 6, Section V.A.3.Note.
- ➢ Updated *Other-than-Serious, No Initial Penalty* in Chapter 6, Section V.C.
- ➢ Updated *Willful Violations* in Chapter 6, Section VI., Section VI.A.3., and Section VI.B.
- ➢ Updated Percent Reduction for *Serious Willful Penalty Reductions* in Chapter 6, Table 6-7.
- ➢ Updated Gravity for *Penalties to be Proposed for Serious Willful Violations* in Chapter 6, Table 6-8.
- ➢ Updated *Willful Regulatory Violation* in Chapter 6, Section VI.C.2.
- ➢ Updated *Significant Enforcement Actions* in Chapter 6, Section IX.A,B,C&D.
- ➢ Updated *1903 and 1904 Regulatory Requirements* in Chapter 6, Section X.
- ➢ Updated *Failure to Post a Citation* in Chapter 6, Section X.A.2.a&b.
- ➢ Updated *Proposed Penalties to Medical and Exposure Records* in Chapter 6, Section XI.A.

**Disclaimer**

This manual is intended to provide instruction regarding some of the internal operations of the Occupational Safety and Health Administration (OSHA), and is solely for the benefit of the Government. No duties, rights, or benefits, substantive or procedural, are created or implied by this manual. The contents of this manual are not enforceable by any person or entity against the Department of Labor or the United States. Statements which reflect current Occupational Safety and Health Review Commission or court precedents do not necessarily indicate acquiescence to those precedents.

# Chapter 9

# COMPLAINT AND REFERRAL PROCESSING

I.  Safety and Health Complaints and Referrals.
    A.  Definitions.
        1.  Complaint.
            Notice of an alleged safety or health hazard (over which OSHA has jurisdiction), or a violation of the Act. There are two types; formal and non-formal.
            a.  Formal Complaint.
                Complaint made by a current employee or a representative of employees that meets all of the following requirements:
                ➢  Asserts that an imminent danger, a violation of the Act, or a violation of an OSHA standard exposes employees to a potential physical or health harm in the workplace;
                ➢  Is reduced to writing or submitted on a *Complaint (OSHA-7)*; and
                ➢  Is signed by at least one current employee or employee representative.
            b.  Non-formal Complaint.
                Any complaint alleging a safety or health violation(s) that does not meet all of the requirements of a formal complaint identified above and does not come from one of the sources identified under the definition of Referral, below.
        2.  Inspection.
            An onsite examination of an employer's worksite conducted by an OSHA compliance officer, initiated as the result of a complaint or referral, and meeting at least one of the criteria identified in Section C, Criteria Warranting an Inspection, below.
        3.  Inquiry.
            A process conducted in response to a complaint or a referral that does not meet one of the identified inspection criteria as listed in Section C. It does not involve an onsite inspection of the workplace, but rather the employer is notified of the alleged hazard(s) or violation(s) by telephone, fax, email, or by letter if necessary. The employer is then requested to provide a response, and OSHA will notify the complainant of that response via appropriate means.
        4.  Electronic Complaint.
            A complaint submitted via OSHA's public website. All complaints submitted via OSHA's public website are initially considered non-formal. See Chapter 9 Section I.E.5., to determine when electronic complaints are to be considered formal.
        5.  Permanently Disabling Injury or Illness.
            An injury or illness that has resulted in permanent disability or an illness that is chronic or irreversible. Permanently disabling injuries or illnesses include, but are not limited to: amputation, blindness, a standard threshold shift in hearing, lead or mercury poisoning, paralysis or third-degree burns.
        6.  Referral.
            An allegation of a potential workplace hazard or violation received from one of the sources listed below.
            a.  CSHO referral – information based on the direct observation of a CSHO.

     b. <u>Safety and health agency referral</u> – from sources including, but not limited to: NIOSH, state programs, consultation, and state or local health departments, as well as safety and/or health professionals in other Federal agencies.

     c. <u>Descrimination complaint referral</u> – made by a whistleblower investigator when an employee alleges that he or she was retaliated against for complaining about safety or health conditions in the workplace, refusing to do an allegedly imminently dangerous task, or engaging in other activities related to occupational safety or health.

     d. <u>Other government agency referral</u> – made by other Federal, State, or local government agencies or their employees, including local police and fire departments.

     e. <u>Media report</u> – either news items reported in the media or information reported directly to OSHA by a media source.

     f. <u>Employer/Employer Representative report</u> – of accidents other than fatalities and catastrophes.

7. <u>Representative of Employees.</u>
   Any of the following:

     a. An authorized representative of the employee bargaining unit, such as a certified or recognized labor organization.

     b. An attorney acting for an employee.

     c. Any other person acting in a bona fide representative capacity, including, but not limited to, members of the clergy, social workers, spouses and other family members, and government officials or nonprofit groups and organizations acting upon specific complaints and injuries from individuals who are employees.

   NOTE: The representative capacity of the person filing complaints on behalf of another should be ascertained unless it is already clear. In general, the affected employee should have requested, or at least approved, the filing of the complaint on his or her behalf.

B. <u>Classifying as a Complaint or a Referral.</u>
Whether the information received is classified as a complaint or a referral, an inspection of a workplace is normally warranted if **at least one** of the conditions in Section C, Criteria Warranting an Inspection is met.

C. <u>Criteria Warranting an Inspection.</u>
An inspection is normally warranted if **at least one** of the conditions below is met (but see also <u>Section I.D.</u>, of this chapter, Scheduling an Inspection of an Employer in an Exempt Industry):

1. A valid formal complaint is submitted. Specifically, the complaint must be reduced to writing or submitted on a *Complaint (OSHA-7)*, be signed by a current employee or representative of employees, and state the reason for the inspection request with reasonable particularity. Additionally, there must be reasonable grounds to believe either that a violation of the Act or OSHA standard that exposes employees to physical harm exists, or that an imminent danger of death or serious injury exists, as provided in <u>Section 8(f)(1)</u> of the Act.

2. The information received in a signed, written complaint from a current employee or employee representative that alleges a recordkeeping deficiency that indicates the existence of a potentially serious safety or health violation.

3. The information alleges that a permanently disabling injury or illness has occurred as a result of the complained of hazard(s), and there is reason to believe that the hazard or related hazards still exist.

4. The information alleges that an imminent danger situation exists.
5. The information concerns an establishment and an alleged hazard covered by a local, regional, or national emphasis program (such as the Site-Specific Targeting Plan).
6. The employer fails to provide an adequate response to an inquiry, or the individual who provided the original information provides further evidence that the employer's response is false or does not adequately address the hazard(s). The evidence must be descriptive of current, on-going or recurring hazardous conditions.
7. The establishment that is the subject of the information has a history of egregious, willful, failure-to-abate, or repeated citations within the Area Office's jurisdiction during the past three years, or is an establishment or related establishment in the Severe Violator Enforcement Program. However, if the employer has previously submitted adequate documentation for these violations demonstrating that they were corrected and that programs have been implemented to prevent a recurrence of hazards, the Area Director will normally determine that an inspection is not necessary.
8. A whistleblower investigator or Regional Supervisory Investigator requests that an inspection be conducted in response to an employee's allegation that the employee was discriminated against for complaining about safety or health conditions in the workplace, refusing to perform an allegedly dangerous job or task, or engaging in other activities related to occupational safety or health.
9. If an inspection is scheduled or has begun at an establishment and a complaint or referral that would normally be handled via inquiry is received, that complaint or referral may, at the Area Director's discretion, be incorporated into the scheduled or ongoing inspection. If such a complaint is formal, the complainant must receive a written response addressing the complaint items.
10. If the information gives reasonable grounds to believe that an employee under 18 years of age is exposed to a serious violation of a safety or health standard or a serious hazard, an onsite inspection will be initiated if the information relates to construction, manufacturing, maritime, agriculture, or other industries as determined by the Area Director. Limitations placed on OSHA's activities in agriculture by Appropriations Act provisions will be observed. See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, dated May 28, 1998. A referral to Wage and Hour should also be initiated.
    NOTE: The information does not need to allege that a child labor law has been violated.
D. Scheduling an Inspection of an Employer in an Exempt Industry.
    In order to schedule an inspection of an employer in an exempt industry classification as specified by Appropriations Act provisions (See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, dated May 28, 1998):
    1. The information must come directly from a current employee; OR
    2. It must be determined and documented in the case file that the information came from a representative of the employee (see Section I.A.7., of this chapter, Representative of Employees), with the employee's knowledge of the representative's intended action.
E. Electronic Complaints Received via the OSHA Public Website.
    1. Electronic complaints submitted via the OSHA public website are automatically forwarded via email to a designated Area Office in the appropriate state. That Office then forwards the electronic complaints to the appropriate Area Office in the state.
    2. Each Area Office manages a "Complaints" mailbox and processes electronic complaints according to internal complaint processing procedures. The complaints

mailbox is monitored daily and every incoming complaint is reviewed for jurisdiction.

    a. If the complaint falls within the jurisdiction of the Area Office, the complaint is entered into OIS and processed as usual.

    b. If the complaint falls within the jurisdiction of another Area Office, the complaint is forwarded appropriately.

3. Area Offices will coordinate with State Plan States to establish procedures to process electronic complaints. The State establishes its own internal procedures for responding to such complaints. These procedures may be the State's usual procedures for handling unsigned complaints or they may include some further coordination with the complainant prior to action. In State Plan States, the Federal Monitoring office will screen the complaints unless there is another arrangement. If the complaint falls within the individual State Plan's jurisdiction, the Screening Office will follow the procedures developed with the State Plan for processing the complaint.

4. Complete a *Complaint (OSHA-7)* for all complaint information received. In order to facilitate the tracking of electronic complaints, enter the following code in the Optional Information field:

**N-11-LOGXXXXXX**

    ➢ Where N-11 indicates that the complaint was filed electronically; and

    ➢ The digits following LOG are the unique complaint ID/log numbers assigned to the electronic complaint when processed by the Salt Lake Technical Center. The log number may vary and does not have to be exactly six digits. In entering the code, there is no space between the word LOG and the digits that follow.

5. Electronic complaints where a current employee has provided their name **and** checked the *"This constitutes my electronic signature"* box shall be considered as a formal complaint and processed accordingly.

6. All complaint-related material received electronically should be printed and date stamped with the date the material was submitted and received. When these dates are not the same, the Area Director will determine the appropriate date for the incoming material.

F. <u>Information Received by Telephone.</u>

1. While speaking with the caller, OSHA personnel will attempt to obtain the following information:

    a. Whether the caller is a current employee or an employee representative.

    b. The exact nature of the alleged hazard(s) and the basis of the caller's knowledge. The individual receiving the information must determine, to the extent possible, whether the information received describes an apparent violation of OSHA standards or the OSH Act.

    c. The employer's name, address, email address, telephone and fax numbers, as well as the name of a contact person at the worksite.

    d. The name, address, telephone number, and email address of any union and/or employee representative at the worksite.

2. As appropriate, OSHA will provide the caller with the following information:

    a. Describe the complaint process, and if appropriate, the concepts of "inquiry" and "inspection," as well as the relative advantages of each.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 18 of 102   Document 1

    b. If the caller is a current employee or a representative of employees, explain the distinction between a formal complaint and a non-formal complaint, and the rights and protections that accompany filing a formal complaint. These rights and protections include:
- The right to request an onsite inspection.
- Notification in writing if an inspection is deemed unnecessary because there are no reasonable grounds to believe that a violation or danger exists.
- The right to obtain review of a decision not to inspect by submitting a request for review in writing.

3. Information received by telephone from a current employee is considered a non-formal complaint until that individual provides a signed copy of the information. The employee can mail, email or fax a signed copy of the information, request that a *Complaint (OSHA-7)* be sent, or sign the information in person at the Area Office. Normally a complainant has five working days to formalize an electronic complaint.

4. If appropriate, inform the complainant of rights to confidentiality in accordance with Section 8(f)(1) of the Act for private sector employees, and Executive Order 12196 for Federal employees, and ask whether the complainant wishes to exercise this right. When confidentiality is requested, the identity of the complainant is protected regardless of the formality of the complaint.

5. Explain Section 11(c) rights to private sector employees and employees of the U.S. Postal Service, or reprisal and discrimination protection provided by Executive Order 12196, §1960.46 and the Whistleblowers Protection Act of 1989 to Federal employees. See Chapter 13, Section III.E., for reports of reprisal or discrimination from Federal employees.

G. Procedures for Handling Complaints Filed in Multiple Area Offices or Regions.

1. When a Regional Office determines that multiple offices within the Region have received the same complaint or, if the Regional Office suspects the same complaint has been filed in multiple Regions, the Regional Office should contact the Director or Deputy Director of the Directorate of Enforcement Programs (DEP).

2. DEP will query all 10 Regions and coordinate with the Directorate of Cooperative and State Programs to query the State Plan States in order to determine whether similar complaints were filed in multiple offices.
    a. If multiple Regions have received the same complaint, the National Office will address the complaint with the employer.
    b. Area Offices should indicate in OIS that these complaints have been transferred to the National Office.

H. Procedures for an Inspection.

1. Upon receipt of a complaint or referral, the Area Director (or his or her designee) will evaluate all available information to determine whether there are reasonable grounds to believe that a violation or hazard exists.
    a. If necessary, reasonable attempts will be made to contact the individual who provided the information in order to obtain additional details or to clarify issues raised in the complaint or referral. See the Complaint Questionnaire beginning on page 9-13.
    b. The Area Director may determine not to inspect a facility if he/she has a substantial reason to believe that the condition complained of is being or has been abated.

9-5

2. Despite the existence of a complaint, if the Area Director believes there is no reasonable grounds that a violation or hazard exists, no inspection or inquiry will be conducted.
   a. Where a formal complaint has been submitted, the complainant will be notified in writing of OSHA's intent not to conduct an inspection, the reasoning behind the determination, and the right to have the determination reviewed under §1903.12. The justification for not inspecting will be noted in the case file.
   b. In the event of a non-formal complaint or referral, if possible, the individual providing the information will be notified by appropriate means of OSHA's intent not to conduct an inquiry or inspection. The justification for not inspecting or conducting an inquiry will be noted in the case file.
3. If the information contained in the complaint or referral meets at least one of the inspection criteria listed in Section I.C., of this chapter, Criteria Warranting an Inspection, and there are reasonable grounds to believe that a violation or hazard exists, the Area Office is authorized to conduct an inspection.
   a. If appropriate, the Area Office will inform the individual providing the information that an inspection will be scheduled and that he or she will be advised of the results.
   b. After the inspection, the Area Office will send the individual a letter addressing each information item, with reference to the citation(s) or a sufficiently detailed explanation for why a citation was not issued.
4. If an inspection is warranted, it will be initiated as soon as resources permit. Inspections resulting from formal complaints of serious hazards will normally be initiated within five working days of formalizing.

I. Procedures for an Inquiry.
   1. If the complaint or referral does not meet the criteria for initiating an onsite inspection, an inquiry will be conducted. OSHA will promptly contact the employer to provide notification of the complaint or referral and its allegation(s), and fax or email a confirming letter.
   2. If a non-formal complaint is submitted by a current employee or a representative of employees that does not meet any of the inspection criteria, the complainant may be given five working days to make the complaint formal.
      a. The complainant may come into the Area Office and sign the complaint, or mail, email, or fax a signed complaint letter to OSHA. Additionally, a *Complaint (OSHA-7)* can be mailed or faxed to the complainant, if appropriate.
      b. If the complaint is not made formal after five working days, after making a reasonable attempt to inform the complainant of the decision, OSHA will proceed with the inquiry process.
   3. The employer will be advised of what information is needed to answer the inquiry and encouraged to respond by fax or email. See Chapter 13, Federal Agency Field Activities, for differing Federal Agency procedures. Employers are encouraged to do the following:
      a. Immediately investigate and determine whether the complaint or referral information is valid and make any necessary corrections or modifications.
      b. Advise the Area Director either in writing via email or fax within five working days of the results of the investigation into the alleged complaint or referral information. At the discretion of the Area Director, the response time may be longer or shorter than five working days, depending on the circumstances. Additionally, although the employer is requested to respond within the above

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 20 of 102   Document 1

time frame, the employer may not be able to complete abatement action during that time, but is encouraged to do so.

    c. Provide the Area Director with supporting documentation of the findings, including any applicable measurements or monitoring results, and photographs and/or videos that the employer believes would be helpful, as well as a description of any corrective action the employer has taken or is in the process of taking.

    d. Post a copy of the letter from OSHA where it is readily accessible for review by all employees.

    e. Return a copy of the signed Certificate of Posting to the Area Office.

    f. If there is a recognized employee union or safety and health committee in the facility, provide them with a copy of OSHA's letter and the employer's response.

4. As soon as possible after contacting the employer, a notification letter will be faxed to the employer, or mailed where no fax is available. Sample letters to complainants and employers are provided on the NCR. Note that some of these letters are for private sector use and some are for Federal Agency use. If email is an acceptable means of responding, this should be indicated in the notification letter and the proper email address should be provided.

5. If no employer response or an inadequate employer response is received after the allotted five working days, additional contact with the employer may be made before an inspection is scheduled. If the employer provides no response or an inadequate response, or if OSHA determines from other information that the condition has not been or is not being corrected, an inspection will be scheduled.

6. The complainant will be advised of the employer's response, as well as the complainant's rights to dispute that response, and if the alleged hazard persists, of the right to request an inspection. When OSHA receives an adequate response from the employer and the complainant does not dispute or object to the response, an onsite inspection normally will not be conducted.

7. If the complainant is a current employee or a representative of employees and wishes to dispute the employer's response, the disagreement must be submitted in writing and signed, thereby making the complaint formal.

    a. If the employee disagreement takes the form of a written and signed formal complaint, then see Section I.H., of this chapter, Procedures for an Inspection.

    b. If the employee disagreement does not take the form of a written and signed formal complaint, some discretion is allowed in situations where the information does not justify an onsite inspection. In such situations, the complainant will be notified of OSHA's intent not to conduct an inspection and the reasoning behind the determination. This decision should be thoroughly documented in the case file.

8. If a signed complaint is received after the complaint inquiry process has begun, the Area Director will determine whether the alleged hazard is likely to exist based on the employer's response and by contacting the complainant. The complainant will be informed that the inquiry has begun and that the complainant retains the right to request an onsite inspection if he/she disputes the results and believes the hazard still exists.

9. The complaint must not be closed until OSHA verifies that the hazard has been abated.

10. The justification for not conducting an inquiry will be noted in the case file.

J. Complainant Protection.

1. Identity of the Complainant.
   Upon request of the complainant, his or her identity will be withheld from the employer in accordance with Section 8(f)(1) of the Act. No information will be given to the employer that would allow the employer to identify the complainant.
2. Whistleblower Protection.
   a. Section 11(c) of the Act provides protection for employees who believe that they have been the subject of an adverse employment action in retaliation for engaging in activities related to workplace safety or health. Any employee who believes that he or she has been discharged or otherwise retaliated against by any person as a result of engaging in such activities may file a whistleblower complaint. The complaint must be filed within thirty days of the discharge or other retaliation.
   b. Complainants should always be advised of their Section 11(c) rights and protections upon initial contact with OSHA and whenever appropriate in subsequent communications.

K. Recording in OIS.
   Information about complaint and referral inspections or inquiries must be recorded in OIS following the current instructions outlined in the FOM. Referrals reported by the employer will be recorded in OIS following the guidance provided in the Memorandum entitled, "*Interim Enforcement Procedures for New Reporting Requirements under 29 C.F.R. 1904.39*", dated December 24, 2014, or unless superseded by future agency-approved correspondence.

II.  Whistleblower Complaints.
   A. OSHA enforces the whistleblower or anti-retaliation provisions of the OSH Act and sixteen other federal statutes. A desk reference summarizing these statutes can be found in the Whistleblower Investigations Manual on OSHA's Web site. These statutes generally provide that employers may not discharge or otherwise retaliate against an employee because the employee has reported an alleged violation related to the statute to an employer or a government agency, or otherwise exercised any rights provided to employees by the various statutes.
   B. When a retaliation complaint is made under any of the sixteen federal whistleblower statutes enforced by OSHA other than the OSH Act, the complainant should be referred promptly to the Regional Supervisory Investigator or Team Leader because the requirements for filing complaints under those statutes vary from those of the OSH Act. They should also be advised that there are statutory deadlines for filing these complaints.
   C. In the context of an OSHA enforcement action or a consultation activity, the complainant will be advised of the protection against retaliation afforded by Section 11(c) of the Act. A Section 11(c) complaint may be in any form, including an oral complaint made to a CSHO. Thus, if a person alleges that he has suffered an adverse action because of activity protected under Section 11(c), CSHOs will record that person's identifying information and the date and time of this initial contact on an OSHA-87 form and forward it to the Regional Supervisory Investigator or Team Leader for processing.
   D. In State Plan States, employees may file occupational safety and health retaliation complaints with Federal OSHA, the State, or both. Federal OSHA normally refers such complaints to the State Plan States for investigation. OSHA's Whistleblower Manual outlines the Agency's referral/deferral policies for such complaints.

III. Decision Trees.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 22 of 102   Document 1

A. See tree on page 9-10 for OSHA enforcement action or consultation activity when information is obtained in writing.
B. See tree on page 9-12 for OSHA enforcement action or consultation activity when information is obtained orally.

# Written Complaint Processing

OSHA receives a written (including electronic submission) complaint.

Submitted by current employee or employee rep?

- Yes
- No

Signed?

- Yes → **Formal Complaint**
- No → **Non-Formal Complaint**

Submitted by source listed in I.A.6?

- No → **Non-Formal Complaint**
- Yes → **Referral.**

Meets at least 1 criterion in I.C.?

- No → ✓ Allow complainant to provide more information.
- Yes → **To Page 2**

More info?

- Yes → **To Page 2**
- No → Notify complainant no inspection/inquiry.

## Shapes Key

Start/End:

Decision:

Process:

Preparation Step:

Switch Table:

9-10

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 24 of 102   Document 1



Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 25 of 102   Document 1

# Telephone Complaint Processing



Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 26 of 102   Document 1

**Complaint Questionnaire**

Obtain information from the caller by asking the following questions, where relevant.

**For All Complaints:**

1.  What is the specific safety or health hazard?

    _____

    _____

    _____

2.  Has the hazardous condition been brought to the employer's attention? If so, when? How?

    _____

    _____

    _____

3.  How are employees exposed to this hazard? Describe the unsafe or unhealthful working conditions; identify the location.

    _____

    _____

    _____

4.  What work is done in the unsafe/unhealthful area? Identify, as well as possible, the type and condition of equipment in use, the materials (e.g., chemicals) being used, the process/operation involved, and the kinds of work being done near the hazardous area. Have there been any recent chemical spills, releases, or accidents?

    _____

    _____

    _____

5.  With what frequency are employees doing the task that leads to the exposure? Continuously? Every day? Every week? Rarely? For how long at one time? How long has the condition existed (so far as can be determined)? Has it been brought to the employer's attention? Have any attempts been made to correct the condition, and, if so, who took these actions? What were the results?

    _____

    _____

    _____

6.  How many shifts are there? What time do they start? On which shift does the hazardous condition exist?

    _____

    _____

    _____

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 27 of 102   Document 1

7. What personal protective equipment (e.g., hearing protection, gloves or respirators) is required by the employer relevant to the alleged exposure? Is it used by employees? Include all PPE and describe it as specifically as possible. Include the manufacturer's name and any identifying numbers.

_____

_____

_____

8. How many people work in the establishment? How many are exposed to the hazardous conditions? How near do they get to the hazard?

_____

_____

_____

9. Is there an employee representative or a union in the establishment? Include the name, address, and telephone number of the union and/or the employee representative(s).

_____

_____

_____

**For Health Hazards**

10. Has the employer administered any tests to determine employee exposure levels to the hazardous conditions or substance? Describe these tests. Can the employees get the results (as required by the standard)? What were the results?

_____

_____

_____

11. What engineering controls are in place in the area(s) in which the exposed employees work? For instance, are there any fans or acoustical insulation in the area which may reduce exposure to the hazard?

_____

_____

_____

12. What administrative or work practice controls has the employer put in place?

_____

_____

_____

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 28 of 102   Document 1

13. Do any employees have any symptoms that may have been caused by exposure to hazardous substances? Have any employees ever been treated by a physician for a work-related disease or condition? What was it?

_____

_____

_____

14. Have there been any "near-miss" incidents?

_____

_____

_____

15. Are respirators worn to protect against health hazards? If so, what kind? What exposures are they protecting against?

_____

_____

_____

16. If the complaint is related to noise, what, if any, hearing protection is provided and worn by the employees?

_____

_____

_____

17. Do employees receive audiograms on a regular basis?

_____

_____

_____

**For Safety Hazards:**

18. Under what adverse or hazardous conditions are employees required to work? This should include conditions contributing to stress and "other" probability factors.

_____

_____

_____

19. Have any employees been injured as a result of this hazardous condition? Have there been any "near-miss" incidents?

_____

_____

_____

9-15



# OSHA INSTRUCTION

| **DIRECTIVE NUMBER:** CPL 03-00-019 | **EFFECTIVE DATE:** 8/13/2015 |
| --- | --- |

**SUBJECT:** National Emphasis Program on Amputations

## ABSTRACT

**Purpose:** This Instruction, *National Emphasis Program on Amputations,* extends policies and procedures for implementing a National Emphasis Program (NEP) to identify and to reduce workplace machinery and equipment hazards which are causing or likely to cause amputations.

**Scope:** OSHA-wide.

**References:** OSHA Instruction CPL 04-00-001, (CPL 2-0.102A) Procedures for Approval of Local Emphasis Programs, November 11, 1999.

**Cancellations:** OSHA Instruction CPL 03-00-003, National Emphasis Program on Amputations (10/27/2006)

**State Impact:** State adoption required in part, See paragraph V.

**Action Offices:** National, Regional, and Area Offices

**Originating Office:** Directorate of Enforcement Programs

**Contact:** Directorate of Enforcement Programs
Office of General Industry and Agricultural Enforcement
200 Constitution Avenue, NW, N3119
Washington, DC 20210
(202-693-1850)

By and Under the Authority of

Loren Sweatt
Deputy Assistant Secretary

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 30 of 102   Document 1

## Executive Summary

This Instruction extends policies and procedures for implementing a National Emphasis Program (NEP) to identify and to reduce workplace machine and equipment hazards which are causing or likely to cause amputations. A detailed analysis of the targeted industries has been conducted through an executive summary to determine their continued coverage in this NEP. Data from general industry and the targeted industries suggest that amputation related inspections were being under-reported. The intent of this NEP is to target workplaces with machinery and equipment that cause (or are capable of causing) amputations, while maximizing the Agency's inspection resources. OSHA has committed to utilizing the code "AMPUTATE" to code and track these activities.

## Significant Changes

The original National Emphasis Program on Amputations, which was scheduled to expire on August 13, 2018, has been extended through September 30, 2019.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 31 of 102   Document 1

# TABLE OF CONTENTS

I.      PURPOSE ...................................................................................1

II.     SCOPE ......................................................................................1

III.    REFERENCES. ..........................................................................1

IV.     CANCELLATIONS ....................................................................2

V.      EXPIRATION DATE ..................................................................2

VI.     FEDERAL PROGRAM CHANGE ..............................................2

VII.    ACTION ....................................................................................3

VIII.   APPLICATION .........................................................................3

IX.     BACKGROUND .........................................................................3

X.      PROGRAM PROCEDURES........................................................3

XI.     SCHEDULING AND RESOURCE ALLOCATION .....................5

XII.    COORDINATION.......................................................................6

XIII.   TRAINING .................................................................................6

XIV.    FEDERAL AGENCIES...............................................................7

XV.     PROGRAM EVALUATION........................................................7

XVI.    RELATIONSHIP TO OTHER PROGRAMS.................................7

XVII.   TARGETING METHODOLOGY. ...............................................7

XIX.    ESTABLISHMENT IDENTIFICATION .....................................10

XX.     NEW RULE................................................................................10

APPENDIX A:  MACHINERY AND EQUIPMENT.........................A-1

APPENDIX B:  RELATED ANSI /ASME STANDARDS ..................B-1

APPENDIX C:  AMPUTATIONS TARGETING METHODOLOGY .................C-3

I. Purpose. This instruction extends policies and procedures for implementing a National Emphasis Program (NEP) to identify and to reduce workplace machine and equipment hazards which are causing or likely to cause amputations. *Amputation* is defined as a "traumatic loss of limb or other external body part. (http://www.bls.gov/iif/osh_oiics_2010_2_1_2.pdf).

Amputations include a part, such as a limb or appendage that has been severed, cut off, amputated (either completely or partially); fingertip amputation with or without bone loss; medical amputations resulting from irreparable damage; amputations of body parts that have since been reattached. Amputations do not include avulsions, enucleations, deglovings, scalping, severed ears, or broken or chipped teeth".

II. Scope. This Instruction applies OSHA-wide.

III. References.

A. OSHA Instruction CPL 04-00-001, November 10, 1999, Procedures for Approval of Local Emphasis Programs and Experimental Programs.

B. OSHA Standards 29 CFR 1910, Subpart J, General Environmental Controls, §1910.147, The Control of Hazardous Energy (Lockout/Tagout).

C. OSHA Standards 29 CFR 1910, Subpart O, Machinery and Machine Guarding.

D. OSHA Standards 29 CFR 1910, Subpart P, Hand and Portable Powered Tools & Other Hand-Held Equipment.

E. OSHA's Safety and Health Management Guidelines, 54 FR 3904, January 26, 1989.

F. OSHA Instruction CPL 02-00-025, January 4, 1995, Scheduling System for Programmed Inspections.

G. Executive Order 12196, Section 1-201.

H. OSHA Standards 29 CFR 1960.16, Compliance with OSHA Standards.

I. OSHA Instruction CSP 01-00-002, March 21, 2001, State Plan Policies and Procedures Manual (SPM).

J. OSHA Instruction CPL 02-00-150, April 22, 2011, Field Operations Manual (FOM).

K. OSHA Publication 3157, A Guide for Protecting Workers from Woodworking Hazards.

L. OSHA Safety and Health Topics Web Page, Machine Guarding, http://www.osha.gov/SLTC/machineguarding/index.html.

M. OSHA Safety and Health Topics Web Page, Control of Hazardous Energy, http://www.osha.gov/SLTC/controlhazardousenergy/index.html.

N. OSHA Instruction CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act, and Appendix A, change effective January 30, 2015, or most recent version.

O. Bureau of Labor Statistics (BLS), Table R1. Number of Nonfatal Occupational Injuries and Illnesses Involving Days Away From Work by Industry and Selected Natures of Injury or Illness, (Calendar year 2009, 2010, 2011, 2012 and 2013)

1

http://www.bls.gov/news.release/pdf/osh2.pdf

P. Bureau of Labor Statistics (BLS), Table R5.  http://www.bls.gov/iif/oshcdnew.htm Incidence Rates for Nonfatal Occupational Injuries and Illnesses by Involving Days Away From Work per 10,000 Full-Time Workers by Industry and Selected Natures of Injury or Illness, (Calendar year 2009, 2010, 2011, 2012 and 2013).

Q. Bureau of Labor Statistics (BLS), Table R25.  Number of Nonfatal Occupational Injuries and Illnesses Involving Days Away From Work by Source of Injury or Illness and Selected Natures of Injury or Illness, (Calendar year 2009, 2010 and 2011, 2012 and 2013).

R. Executive Office of the President, Standard Industrial Classification Manual, 1987.

S. Executive Office of the President, North American Industry Classification System, United States, 1997.

T. Executive Office of the President, North American Industry Classification System, United States, 2002.

U. Executive Office of the President, North American Industry Classification System, United States, 2012

V. Occupational Safety and Health Act of 1970 [29 U.S.C. §654(a)(1 - 2)].

IV.  Cancellations.  OSHA Instruction CPL 2-1.35; National Emphasis Program on Amputations, October 27, 2006.

V.  Expiration Date.  This instruction will expire September 30, 2019.

VI.  Federal Program Change.  This instruction describes a Federal Program change.  Because of the significant nature of the policy changes contained in this Instruction, notice of intent regarding State adoption of an Amputations emphasis program in response to this Instruction is required.  The notice should indicate whether the State's program is/will be identical to or different from the Federal.

If a State adopts an emphasis program on Amputations which differs from this Instruction, States may either post their policy on their State Plan's website and provide a link to OSHA or submit their policy to OSHA in electronic format, for posting on OSHA's website.  An explanation of the differences must also be posted/submitted for posting.  Where the State adopts an identical emphasis program on Amputations, a statement to that effect with appropriate State references may be sufficient for posting.

State Emphasis Programs:  States are expected to keep their Regional Administrators informed of all State emphasis programs, whether the same as the Federal or different, and of experimental programs, local problem solving projects, etc.  A list of the State's Local Emphasis Programs must be accessible to all interested parties through posting on the State's website or submission to OSHA for posting.  Where State emphasis programs differ from the Federal, the assignment of appropriate IMIS identifier codes should be coordinated with the Directorate of Administrative Programs and the Regional Administrator.

VII.    Action.  OSHA Regional Administrators (RAs), Area Directors (ADs) and National Office (NO) Directors must ensure that the policies and procedures set forth in this directive are followed.  RAs must also inform State Consultation Program Managers and the State Plan State Designees in their Regions of the contents of this NEP and its supporting Outreach initiatives.  RAs shall encourage Consultation Programs' involvement in this Agency-wide effort.

VIII.   Application.  This instruction applies to general industry workplaces, where **any** machinery and equipment that are likely to cause amputations are present.  Appendix A lists many of the machinery and equipment most often associated with amputations.  Appendix B lists many National Consensus standards that provide guidance in complying with OSHA standards.

IX.     Background.  The operation of machinery and equipment can be extremely dangerous.  Injuries involving machinery and equipment often result in death or permanent disability.  OSHA's more than 40-year inspection experience indicates that employee exposures to unguarded or inadequately guarded machinery and equipment, together with associated hazardous energy employee exposures during servicing and maintenance activities, occur in many workplaces.  OSHA workplace requirements prescribe measures for the safe operation, servicing and maintenance of machinery and equipment.  (See, e.g., 29 CFR 1910.147, 1910.212, 1910.213, 1910.217, and 1910.219.)

X.      Program Procedures.  This NEP includes four major activities: outreach, targeting/selection, inspection, and program approval.
        A.  Outreach.  Each Regional and Area Office must implement a 90 day outreach program that supports the purpose of this NEP. During this period, the new industries added based on the targeting methodology and the use of NAICS codes will be offered outreach prior to inspection. Letters, news releases by local and national news organizations and trade magazines can assist with disseminating information about this NEP.  Local hospitals, occupational health clinics, and local occupational physicians should be alerted via mail about occupational hazards that are commonly associated with amputations.  Additionally, Outreach programs with employers, professional associations, and local unions may include meetings, training, education, speeches or other activities designed to involve labor and management in the identification and elimination of hazards associated with amputations and machinery.  The Office of Communications will provide support to the Regional and Area Office.  The outreach effort shall include employers with ten or fewer employees.  In their discretion, Regional and Area Offices may disseminate outreach materials to employees, employers, professional associations, and local unions.

        When appropriate, 21(d) Consultation Projects are encouraged to develop their own strategic approaches to address the need to reduce injuries and accidents related to machinery and other equipment associated with causing amputations.

3

B. <u>Targeting/Site Selection</u>. Inspections conducted under this NEP must be scheduled and conducted pursuant to the following priorities.

1. Area and Regional Offices shall follow the guidelines set forth in CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act. This appropriations act exempts an employer from an OSHA inspection that has 10 or fewer employees currently and at all times during the previous 12 months. Regardless of industry, establishments with 10 or fewer employees are not to be included on the program targeting list.

2. Area Offices (AOs) may add to the master list general industry establishments where amputation injuries or fatalities related to machinery and equipment have occurred <u>in the five years</u> preceding the effective date of this directive. If an AO does add to the master list, it must be re-randomized prior to use. The AO may return the modified list to the National Office for assignment of new random numbers or the AO may use the RANDBETWEEN function in Microsoft Excel to assign new random numbers. The AO local evidence of amputations may be based on OIS accident data, workers' compensation data, OSHA 300 data, NIOSH data, and other reliable sources of information (e.g., reports of amputations from hospital admissions, Emergency Medical Services, fire department, and police reports).

3. Deletions. Based on local knowledge, AOs may delete establishments that are not likely to have the targeted machinery and equipment, or firms known to be out of business, documenting the basis for such determinations. CSHOs will proceed with the programmed inspection where it has been determined that a new business is using the same plant and equipment of the previous business. Any establishment, other than those where amputations are known to have occurred, in the previous 5 years that has had a comprehensive safety inspection in the previous 24 months, will be deleted from the list.

Cycle Generation. A "Cycle" can be defined as a subset of establishments from the master list. Creating cycles from a randomized list allows the Area Office to use its enforcement resources more efficiently. Inspecting firms within a cycle in the order that makes the most efficient use of OSHA's resources does not diminish the plan's neutrality. The AO can schedule inspections in the following manners:

1. If the AO intend to inspect the entire master list, it can schedule the inspections in any order. If the AO uses this method, it must account (through inspections and deletions) for the entire list. The AO cannot inspect off a new list until the entire previous list is completed.

2. The AO can inspect the facilities in the random number order provided. If the AO uses this method, it does not need to complete the entire list.

3. The Area Office can create cycles by choosing a set number of establishments from the establishment list sorted in random number order. For example the AO can select the first ten establishments on the list sorted by ascending random number as a first cycle of 10 establishments. The AO can then inspect those establishments in any order, but must finish the cycle prior to beginning a second

4

cycle. Once the first cycle is complete, the office can select the next ten
establishments from the randomized list as its second cycle.

C. <u>Inspection Procedures</u>. Inspections initiated under this NEP will be scheduled and
conducted in accordance with provisions of the FOM, *Inspection Procedures*, except
as noted below.

1. Once an inspection has been scheduled in the Area office and assigned for the
identified establishment, the OSHA Public Inspection Data Web Page will be
searched for the employer's citation and fatality/accident history prior to the
opening conference.

2. At the opening conference, the CSHO will verify with the employer whether any
of machinery and equipment in Appendix A or any other machinery and
equipment that could cause amputations are present in the workplace. If any
machinery and equipment associated with amputations are present in the
workplace, the CSHO should exercise professional judgment in conducting an
inspection of the machinery and equipment with particular attention to employee
exposure to nip points, pinch points, shear points, cutting actions, and other
point(s) of operation. The CSHO should consider and evaluate employee
exposures during any of the following:

   ➢ Regular operation of the machine;
   ➢ Setup/threading/preparation for regular operation of the machine;
   ➢ Clearing jams or upset conditions;
   ➢ Making running adjustments while the machine is operating;
   ➢ Cleaning of the machine;
   ➢ Oiling or greasing of the machine or machine pans;
   ➢ Scheduled/unscheduled maintenance; and
   ➢ Locking out or tagging out.

3. OSHA 300 logs, and 301 incident reports for current and previous three years will
be reviewed during the inspection in order to identify recorded amputations
associated with machinery and equipment.

4. Inspections will be scheduled beginning with the current fiscal year, and will
continue until further notice or until all establishments on the list have been
inspected.

5. ADs, Supervisors, Team Leaders, and CSHOs should ensure that the requirements
for <u>Chapter 5. Case File Preparation and Documentation</u>, (including significant
cases) are being met.

E. <u>Program Approval</u>. Inspection programs that deviate from this NEP must be
approved by the NOs, Directorate of Enforcement Programs.

XI.    <u>Scheduling and Resource Allocation</u>. This is a National initiative which affects existing

5

inspection scheduling priorities, as indicated below.

A. <u>Resources</u>. RAs must ensure that adequate resources are designated for this NEP.

B. <u>Planning</u>. Each RA will report to the Director of Enforcement Programs the number of NEP inspections that are planned for each fiscal year.

C. <u>Priority</u>. Inspections conducted under this NEP may have a lower priority than inspections conducted under other targeting initiatives mandated by the Assistant Secretary; but have a higher priority than other scheduled programmed inspections from regular targeting initiatives. When possible, inspections conducted under this NEP will be combined with other programmed and unprogrammed inspections. This NEP may be combined with other existing initiatives, such as Local Emphasis Programs which identify targets on a different basis.

D. <u>Voluntary Protection Program Sites (VPP)</u>. This National initiative exempts participating worksites. VPP sites will be removed from OSHA's programmed inspection lists of targeted sites, for the duration of approved participation in the VPP. The applicant worksite will be removed from the programmed inspection lists no more than 75 days prior to the commencement of its scheduled pre-approved onsite review. The site will remain off those lists until approved VPP participant has withdrawn or been terminated.

E. <u>OSHA Strategic Partnership Programs (OSP)</u>. This NEP does not exempt Non-Construction worksites.

XII. <u>Coordination</u>.

A. <u>National Office</u>. This NEP will be coordinated in the Office of General Industry and Agricultural Enforcement (GIAE) in the Directorate of Enforcement Programs (DEP). Questions and comments should be coordinated through GIAE at 202-693-1850.

B. <u>Field</u>. Each RA will name a coordinator for this NEP.

XIII. <u>Training</u>. Because of the technical nature of some of these inspections and/or machinery and equipment, CSHOs who conduct inspections under this NEP, and consultation staff, must have had adequate training or experience with both general and specific machine guarding concepts and techniques as well as with hazardous energy control (lockout/tagout) program requirements.

A. <u>The Directorate of Training and Education (DTE)</u>.
DTE provides training materials to CSHOs, consultation staff, and employers. Also, additional sessions of mechanical power press and machine guarding courses can be made available.

B. <u>Additional Training</u>.

1. <u>On-the-Job Training</u>. AD and supervisors must ensure that inexperienced CSHOs receive on-the-job training by accompanying experienced CSHOs during these NEP inspections.

2. <u>Enforcement Issues</u>. Continuing guidance regarding enforcement issues will be provided by OGIAE as new issues arise.

6

XIV.   Federal Agencies.  This instruction describes a change that affects Federal agencies.
Executive Order 12196, Section 1-201, and §1960.16, maintain that Federal agencies
must follow the enforcement policy and procedures contained in this Directive.

XV.   Program Evaluation.  AOs will collect data relevant to the effectiveness of this NEP and
submit it to the RO.  The RO, after summarizing the information, will forward it to the
NO after the end of each fiscal year.  At a minimum, the evaluation should respond to the
requirements of CPL 04-00-001, Procedures for Approval of Local Emphasis Programs
(LEPs).

XVI.   Relationship to Other Programs.
   A.  Unprogrammed Inspections.  If an unprogrammed (e.g., complaint, fatality and
   referral) inspection at an establishment coincides with respect to a programmed
   inspection under this NEP, the two inspections may be conducted either concurrently
   or separately, at the discretion of the Area Office.  (See also XVII.C.)

   B.  Special Emphasis Programs.  If an establishment scheduled for inspection pursuant to
   this NEP is also scheduled for inspection to another NEP or LEP, the inspections may
   be conducted concurrently.  CSHOs will apply applicable OIS codes to the
   inspection.  The employer's number must also be recorded for each inspection.  (See
   also Section XVIII.)

   In the case of an establishment scheduled for inspection under both the Amputation
   initiative and a NEP/LEP, the scope of the inspection shall be limited to the safety
   and health issues targeted by the NEP/LEP program, as well as any machinery and
   equipment hazards which are causing or likely to cause amputations and are in plain
   view.

   C.  Consultation Inspections.  Consultations accomplished in support of this directive
   should input the following into the corresponding fields on the Request Form, the
   Visit Form (Form 30), and the Intervention Form (66); and in OIS Request, Visit and
   Compliance Assistance Activity; as applicable:

| Field Name | Input |
|---|---|
| National Emphasis | Amputate |

XVII.   Targeting Methodology.
The following updated NAICS Codes were derived through a progression of evaluating
data from primarily four factors:
1. OSHA's Integrated Management and Information System (IMIS)
2. OSHA's Information System (OIS)
3. High Amputation rates from the Bureau of Labor and Statistics (BLS)
4. High Amputation numbers from BLS

See Appendix C: Amputations Targeting Methodology for further explanation of the

7

targeting methodology.

| 2012 NAICS | 2012 NAICS US Title |
|---|---|
| 311411 | Frozen Fruit, Juice, and Vegetable Manufacturing |
| 311412 | Frozen Specialty Food Manufacturing |
| 311511 | Fluid Milk Manufacturing |
| 311512 | Creamery Butter Manufacturing |
| 311513 | Cheese Manufacturing |
| 311514 | Dry, Condensed, and Evaporated Dairy Product Manufacturing |
| 311611 | Animal (except Poultry) Slaughtering |
| 311612 | Meat Processed from Carcasses |
| 311613 | Rendering and Meat Byproduct Processing |
| 311615 | Poultry Processing |
| 311811 | Retail Bakeries |
| 311812 | Commercial Bakeries |
| 311813 | Frozen Cakes, Pies, and Other Pastries Manufacturing |
| 311991 | Perishable Prepared Food Manufacturing |
| 311999 | All Other Miscellaneous Food Manufacturing |
| 321113 | Sawmills |
| 321114 | Wood Preservation |
| 321911 | Wood Window and Door Manufacturing |
| 321912 | Cut Stock, Resawing Lumber, and Planing |
| 321918 | Other Millwork (including Flooring) |
| 321920 | Wood Container and Pallet Manufacturing |
| 322211 | Corrugated and Solid Fiber Box Manufacturing |
| 322212 | Folding Paperboard Box Manufacturing |
| 322219 | Other Paperboard Container Manufacturing |
| 322220 | Paper Bag and Coated and Treated Paper Manufacturing |
| 323111 | Commercial Printing (except Screen and Books) |
| 323113 | Commercial Screen Printing |
| 323117 | Books Printing |
| 326111 | Plastics Bag and Pouch Manufacturing |
| 326112 | Plastics Packaging Film and Sheet (including Laminated) Manufacturing |
| 326113 | Unlaminated Plastics Film and Sheet (except Packaging) Manufacturing |
| 326150 | Urethane and Other Foam Product (except Polystyrene) Manufacturing |
| 326160 | Plastics Bottle Manufacturing |
| 327320 | Ready-Mix Concrete Manufacturing |
| 327390 | Other Concrete Product Manufacturing |
| 331491 | Nonferrous Metal (except Copper and Aluminum) Rolling, Drawing, and Extruding |

8

| | |
|---|---|
| 331492 | Secondary Smelting, Refining, and Alloying of Nonferrous Metal (except Copper |
| 332111 | Iron and Steel Forging |
| 332112 | Nonferrous Forging |
| 332114 | Custom Roll Forming |
| 332117 | Powder Metallurgy Part Manufacturing |
| 332119 | Metal Crown, Closure, and Other Metal Stamping (except Automotive) |
| 332311 | Prefabricated Metal Building and Component Manufacturing |
| 332312 | Fabricated Structural Metal Manufacturing |
| 332313 | Plate Work Manufacturing |
| 332321 | Metal Window and Door Manufacturing |
| 332322 | Sheet Metal Work Manufacturing |
| 332323 | Ornamental and Architectural Metal Work Manufacturing |
| 332710 | Machine Shops |
| 332991 | Ball and Roller Bearing Manufacturing |
| 332992 | Small Arms Ammunition Manufacturing |
| 332993 | Ammunition (except Small Arms) Manufacturing |
| 332994 | Small Arms, Ordnance, and Ordnance Accessories Manufacturing |
| 332996 | Fabricated Pipe and Pipe Fitting Manufacturing |
| 332999 | All Other Miscellaneous Fabricated Metal Product Manufacturing |
| 333111 | Farm Machinery and Equipment Manufacturing |
| 333112 | Lawn and Garden Tractor and Home Lawn and Garden Equipment Manufacturing |
| 333611 | Turbine and Turbine Generator Set Units Manufacturing |
| 333612 | Speed Changer, Industrial High-Speed Drive, and Gear Manufacturing |
| 333613 | Mechanical Power Transmission Equipment Manufacturing |
| 333618 | Other Engine Equipment Manufacturing |
| 334510 | Electromedical and Electrotherapeutic Apparatus Manufacturing |
| 334511 | Search, Detection, Navigation, Guidance, Aeronautical, and Nautical System an |
| 334512 | Automatic Environmental Control Manufacturing for Residential, Commercial, an |
| 334513 | Instruments and Related Products Manufacturing for Measuring, Displaying, and |
| 334514 | Totalizing Fluid Meter and Counting Device Manufacturing |
| 334515 | Instrument Manufacturing for Measuring and Testing Electricity and Electrical |
| 334516 | Analytical Laboratory Instrument Manufacturing |
| 334517 | Irradiation Apparatus Manufacturing |
| 334519 | Other Measuring and Controlling Device Manufacturing |
| 336211 | Motor Vehicle Body Manufacturing |
| 336212 | Truck Trailer Manufacturing |
| 336213 | Motor Home Manufacturing |
| 336214 | Travel Trailer and Camper Manufacturing |
| 337110 | Wood Kitchen Cabinet and Countertop Manufacturing |

9

| 337121 | Upholstered Household Furniture Manufacturing |
|---|---|
| 337122 | Nonupholstered Wood Household Furniture Manufacturing |
| 337124 | Metal Household Furniture Manufacturing |
| 337125 | Household Furniture (except Wood and Metal) Manufacturing |
| 337127 | Institutional Furniture Manufacturing |

XVIII.    Reporting, Recording and Tracking.

A. OIS Coding. The inspection must be marked as "Programmed Planned" as the Initiating type, "AMPUTATE" needs to be selected in the "National Emphasis Program" field and "AMPUTATE" must be selected as the "Primary Emphasis Program" (the Amputations inspections are being coded under the NEP for ease of tracking).

B. Complaint Inspections. Whenever an OSHA-7 or OIS Complaint UPA is completed by a Federal office and the applicable complaint alleges the presence of amputation hazards, complete the OSHA-7 or OIS Complaint UPA in the usual manner, and record "AMPUTATE" in the space in item 50 in IMIS. For OIS Complaint UPAs, select "AMPUTATE" as the "National Emphasis Program" on the "Program Info" tab.

C. Fatality and Catastrophe Inspections. Whenever an OSHA-36 or OIS Fat/Cat UPA is completed by a Federal office and the inspecting CSHO is able to identify at the site of the fatality/catastrophe the presence of amputation hazards, complete the OIS Fat/Cat UPA in the usual manner and record "AMPUTATE" in the space in item 36 in IMIS. For OIS Fat/Cat UPAs, select "AMPUTATE" as the "National Emphasis Program" on the "Program Info" tab.

D. Referral Inspections. Whenever an OSHA-90 or OIS Referral UPA is completed by a Federal office and the applicable referral case has amputation hazards as one of the subjects, complete the OSHA-90 or OIS Referral UPA in the usual manner and record "AMPUTATE" in the space in item 30 in IMIS. For OIS Referral UPAs, select "AMPUTATE" as the "National Emphasis Program" on the "Program Info" tab.

XIX.    Establishment Identification. If the DUNS number of an inspected establishment is known, it must be recorded in the appropriate field on the Establishment Detail Screen. The establishment Detail Screen can be accessed by selecting "Search Establishment" from the OIS-Navigation menu on the Home Page.

XX.    New Rule. Occupational Injury and Illness Recording and Reporting Requirements – NAICS Update and Reporting Revisions.

29 CFR Part 1904 has new requirements for reporting work-related fatalities, hospitalizations, amputations or losses of an eye. The new rule, which also updates the

list of employers partially exempt from OSHA record-keeping requirements, went into effect on Jan. 1, 2015, for workplaces under federal OSHA jurisdiction. (See 79 FR 56129, Occupational Injury and Illness Recording and Reporting Requirements – NAICS Update and Reporting Revisions, September 18, 2014.) As part of this NEP, if a report of amputation is received and the employers classified activity is one of the identified NAICS codes, AOs will conduct an inspection based on the Serious Injury Report (SIR) guidance; regardless of the outreach period.

There are two major changes to the former reporting requirements:

A.  **First**, whereas the former regulation applied to employment incidents which resulted in one or more fatalities or hospitalizations of three or more employees, the regulation is expanded to require the reporting of **all** work related fatalities, **all** work-related in patient hospitalizations of **one** or **more** employees, **all** work-related amputations and all work-related losses of an eye.

B.  **Second**, for any in-patient hospitalization, amputation, or eye loss employers must report the incident within 24 hours of learning about it. Fatalities must be reported within 8 hours of learning of the incident. .


Employers have three options for reporting the event:

Telephone the nearest OSHA Area Office during normal business hours.

Telephone the 24-hour OSHA hotline (1 800-321-OSHA or 1-800-321-6742).

OSHA is developing a new means of reporting events electronically, which will be released soon and accessible on OSHA's website.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 43 of 102   Document 1

# APPENDIX A:  MACHINERY AND EQUIPMENT

## (To be used for guidance/not inclusive)

| 2012 (Table R-25*) Combined Amputation Sources |
| --- |
| **Sources of Amputations:  Machinery and Equipment** |
| Agricultural, garden machinery, bailers |
| Aerial lift platforms |
| Benders, Rollers and Shapers |
| Cranes (unspecified) |
| Casting Machinery |
| Conveyors – Belt, Chain, Live Roller, and Auger Screw Conveyors |
| Heating and cooking machinery and appliances |
| Drills – Stationary |
| Extruding Machinery |
| Food and Beverage Processing |
| Grinders, Abraders, and Meat Grinders |
| Material and personnel handling machinery |
| Metal, woodworking, and special material machinery |
| Milling Machines |
| Mowing machinery |
| Mixers, Blenders, Whippers, Slicers, and Food Beverage Processing Equipment |
| Packing, Wrapping, Bundling Machinery |
| Plastic Injection Molding Machinery |
| Press Brakes (All Types) |
| Presses (Mechanical, Hydraulic, and Pneumatic) |
| Printing Presses |
| Sawing Machinery -  (Band, Table, Radial Arm Saws) |
| Shears (All Types) |

*Bureau of Labor Statistics (BLS) Table R25. Number of nonfatal occupational injuries and illnesses involving days away from work by source of injury or illness and selected natures of injury or illness, private industry, 2012 —

A-1

# APPENDIX B:  RELATED ANSI /ASME STANDARDS

OSHA recognizes the value of national consensus standards in terms of useful guidance for employers and employees attempting to comply with specific OSHA standards.

OSHA's enforcement policy provides that a violation may be *de minimis* if an employer complies with a proposed standard or amendment or a consensus standard rather than with the standard in effect at the time of the inspection, <u>and</u> the employer's action clearly provides equal or greater employee protection.  See OSHA Instruction CPL 02-00-150, *Field Operations Manual,* Chapter VIII, Paragraph A (1) through A (4), April 22, 2011.  In applying this principle, OSHA takes heed of its rulemaking findings.

1.    ANSI B11.1- Mechanical Power Presses
2.    ANSI B11.2- Hydraulic Power Presses
3.    ANSI B11.3- Power Press Brakes
4.    ANSI B11.4- Shears
5.    ANSI B11.5- Ironworkers
6.    ANSI B11.6- Lathes
7.    ANSI B11.7- Cold Headers and Cold Formers
8.    ANSI B11.8- Drilling, Milling, and Boring Machines
9.    ANSI B11.9- Grinding Machinery
10.   ANSI B11.10- Metal Sawing Machines
11.   ANSI B11.11- Gear Cutting Machines
12.   ANSI B11.12- Roll-Forming and Roll-Bending Machines
13.   ANSI B11.14- Coil-Slitting Machines
14.   ANSI B11.15- Pipe, Tube, and Shape Bending Machines
15.   ANSI B11.16- Metal Powder Compacting Presses
16.   ANSI B11.17- Horizontal Hydraulic Extrusion Presses
17.   ANSI B11.18- Machinery and Machine Systems for Processing Strip, Sheet, or Plate From Coiled Configuration
18.   ANSI B11.19- Safeguarding When Referenced by the Other B11 Machine Tool Safety Standards
19.   ANSI B5.37- External Cylindrical Grinding Machines (Centerless)
20.   ANSI B5.42- External Cylindrical Grinding Machines (Universal)
21.   ANSI B65.1- Printing Press Systems
22.   ANSI B65.2- Safety Standard – Binding and Finishing Systems
23.   ANSI B65.3- Safety Standard for Guillotine Paper Cutters
24.   ANSI B7.1- Use, Care, and Protection of Abrasive Wheels
25.   ANSI B151.5- Plastic Film and Sheet Winding Equipment
26.   ANSI B151.20- Plastic Sheet Production Machinery
27.   ANSI B155.1- Packaging Machinery and Packaging-Related Converting Machinery
28.   ANSI B177.1- Three Roller Printing Ink Mills
29.   ANSI O1.1- Woodworking Machinery

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 45 of 102   Document 1

30. ANSI Z244.1- Control of Hazardous Energy - Lockout/Tagout and Alternative Methods
31. ASME B5.52M- Mechanical Power Presses, General Purpose Single Point
32. ASME B15.1- Mechanical Power Transmission Apparatus
33. ASME B15.1A- Addenda to B15.1
34. ASME BL5.1B- Addenda to B15.1
35. ASME B20.1- Conveyors and Related Equipment, with Interpretations A and B
36. ASME B20.1A and B20.1B- Addenda to B20.1
37. ASME/CEMA 350- Screw Conveyors
38. ASME/CEMA 401- Unit Handling Conveyors - Roller Conveyors - Non-Powered
39. ASME/CEMA 402- Unit Handling Conveyors - Belt Conveyors
40. ASME/CEMA 403- Unit Handling Conveyors - Belt Driven Live Roller Conveyors
41. ASME/CEMA 404- Unit Handling Conveyors - Chain Driven Live Roller Conveyors
42. ASME/CEMA 405- Packaging Handling Conveyors - Slant Conveyors

**NOTE: This appendix is not an inclusive list of all ANSI and ASME standards that are associated with hazardous machinery and equipment.**

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 46 of 102   Document 1

# APPENDIX C:  AMPUTATIONS TARGETING METHODOLOGY

<u>NATIONAL DATA:</u>

<u>Selection Process for Industries with Significant Inspection Histories (High IMIS[1] Numbers and OIS[2] Numbers).</u>
**Category 1.**
1. OSHA selected five standards (29 CFR 1910.147, .212, .213, .217, and .219) that are generally recognized as being related to amputation hazards.
2. OSHA IMIS and OIS data covering fiscal years 2006-2014 identified those industries with 40 or more federal OSHA inspections with one or more violations of the standards listed in #1 above.
3. OSHA limited the range to the NAICS Sector 31-33, Manufacturing.  This range encompasses all manufacturing operations and addresses amputation issues.
4. The process yielded 80 5-digit NAICS codes.

<u>Selection Process for Industries with High BLS Rates:</u>
**Category 2.**
1. OSHA used the most recent five years of BLS Data (Calendar year 2009, 2010, 2011, 2012 and 2013) on incidence rates for nonfatal occupational injuries and illnesses involving days away from work per 10,000 full-time workers.
2. OSHA limited the range to the NAICS Sector 31-33, Manufacturing.
3. OSHA selected NAICS with BLS incidence rates of 10.0 or greater for amputations for any year.
4. The process yielded 10 5-digit NAICS codes.

<u>BLS Data Selection Process for Industries with High BLS Numbers:</u>
**Category 3.**

1. OSHA used the most recent five years of BLS Data (Calendar year 2009, 2010, 2011, 2012 and 2013) on the number of amputations.
2. OSHA limited the range to the NAICS Sector 31-33, Manufacturing.
3. OSHA selected NAICS with BLS numbers of 50 or more amputations per year.
4. The process yielded 26-5 digit NAICS codes.

The 80 6-Digit NAICS codes that comprise the scope of this NEP have either High IMIS/OIS Numbers coupled with High BLS Amputation Rates or High IMIS/OIS Numbers coupled with High BLS Amputation Numbers.

There are 14 6-digit NAICS codes with high inspection counts and high BLS rates

---

1 IMIS- Integrated Management Information System.  OSHA's database for enforcement data.
2 OIS – OSHA Information System

(categories 1 and 2 above).

- There are 76 6-digit NAICS codes with high inspection counts and high BLS case counts (categories 1 and 3 above).

- After eliminating the overlap between the two groups, the final total is 80 6- Digit NAICS codes.

# OSHA REGIONAL INSTRUCTION

**U.S. DEPARTMENT OF LABOR**     **Occupational Safety and Health Administration**

| | |
|---|---|
| **DIRECTIVE NUMBER:** CPL 04-00 (LEP 002) | **EFFECTIVE DATE:** October 1, 2018 |
| **SUBJECT:** Emphasis Program for Powered Industrial Vehicles | |
| **REGIONAL IDENTIFIER:** Region V | |

## ABSTRACT

| | |
|---|---|
| **Purpose:** | To renew the Local Emphasis Program for Powered Industrial Vehicles |
| **References:** | A) CPL 02-00-160, Field Operations Manual (FOM), August 2, 2016.<br>B) CPL 04-00-002 Procedures for Approval of Local Emphasis Programs (LEPs), November 13, 2018.<br>C) CPL 02-00-111, Citation Policy for Paperwork and Written Program Requirements Violations, November 27, 1995.<br>D) CPL 02-00-051, Enforcement Exemptions and Limitations Under the Appropriations Act, May 28, 1998. |
| **Cancellations:** | This notice cancels the Local Emphasis Program for Powered Industrial Vehicles, CPL 04-00 (LEP 002), made effective October 1, 2017. |
| **Expiration:** | This notice expires September 30, 2023. |
| **State Impact:** | None |
| **Action Offices:** | Region V Area Offices |
| **Originating Office:** | Naperville Area Office |
| **Contact:** | Assistant Regional Administrator<br>Enforcement Programs<br>USDOL-OSHA<br>230 S. Dearborn Street, Rm. 3244<br>Chicago, IL 60604<br>(312) 353-2220 |

By and Under the Authority of


Ken Nishiyama Atha
Regional Administrator

I.    **Purpose.** This Notice continues the Local Emphasis Program for Powered Industrial Vehicles.

II.   **Scope.** This Notice applies to the jurisdictional areas of the Region V OSHA Area Offices. All inspections conducted under this directive will be in accordance with the Field Operations Manual.

Any referral or complaint classified by OSHA as "serious" which alleges a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal "struck/caught/fall hazard" associated with the operation of a powered industrial vehicle (e.g., struck by falling load, struck against, caught between, caught in, or fall hazard) in general industry or construction will be activated for inspection. Additionally, any ongoing inspection where powered industrial vehicles are observed in use will be expanded to evaluate possible violations of the powered industrial truck standard. A hazard is determined by OSHA to be serious if there is substantial probability that death or serious physical harm could result from an existing condition, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use. Inspections meeting the criteria set forth in this LEP will also evaluate safety and health hazards in or around loading docks or other designated loading and unloading areas where powered industrial trucks are in use (Including, but not limited to: loading docks, shipping and receiving areas, yard areas, and other locations where vehicles are loaded and unloaded).

III.  **Expiration.** This Notice expires on September 30, 2023.

IV.   **Definitions.** A powered industrial vehicle (PIV) as used in this LEP includes vehicles as defined by 1910.178, skid steer loaders, and earth moving equipment that was designed to move earth and has been modified to accept forks. Powered industrial vehicles can be ridden or controlled by a walking operator and include any mobile power-propelled truck used to carry, push, pull, lift, stack or tier materials. Vehicles covered include, but are not limited to:

| | |
|---|---|
| High Lift trucks | Counter-balanced trucks |
| Cantilevered trucks | Rider trucks |
| Forklift trucks | High platform trucks |
| Low lift trucks | Loft lift platform trucks |
| Motorized hand trucks | Pallet trucks |
| Narrow aisle trucks | Straddle trucks |
| Reach rider trucks | Single side loader trucks |
| High lift order picker rider trucks | Motorized hand/rider trucks |
| Rough terrain trucks | Skid steer loaders |

V.  **References.**

   A. OSHA Instruction CPL 04-00-002, November 13, 2018, Procedures for Approval of Local Emphasis Programs (LEPs)

   B. CPL 02-00-160, Field Operations Manual (FOM), August 2, 2016

   C. OSHA Instruction CPL 02-00-111, November 27, 1995, Citation Policy for Paperwork and Written Requirement Violations

   D. OSHA Instruction CPL 02-00-051, May 28, 1998, Enforcement Exemptions and Limitations Under the Appropriations Act

VI. **Background.** A Powered Industrial Truck (PIT) Local Emphasis Program (LEP) originated in the Illinois Area Offices in FY 2003 due to the number of PIT fatalities within the State. In FY 2007, the Region V PIT LEP was expanded to all of the Illinois, Ohio, and Wisconsin OSHA Area Offices and the name was changed to Powered Industrial Vehicle (PIV). The reason for the national and local emphasis on powered industrial vehicles is the need to reduce the number of fatalities caused by PIVs. In the Federal jurisdiction of Region V, PIVs have been the source of 136 occupational fatalities from fiscal years 2006 through 2018.

The breakdown of these fatalities by equipment and hazard type in the past thirteen fiscal years in Region V follows. This information is provided to OSHA staff so that they can advise employers of the biggest risks of fatal incidents and to better evaluate workplaces for these hazards.

*Region V PIV Fatality Comparison – FYs 2006 – 2018*

| Powered Industrial Vehicle | FY 06 | FY 07 | FY 08 | FY 09 | FY 10 | FY 11 | FY 12 | FY 13 | FY 14 | FY 15 | FY 16 | FY 17 | FY 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Forklifts (includes walkies) | 15 | 10 | 9 | 5 | 9 | 5 | 7 | 8 | 5 | 10 | 7 | 3 | 5 |
| Skid steers/Bobcats | 3 | 1 | 0 | 1 | 3 | 0 | 1 | 1 | 1 | 2 | 1 | 2 | 3 |
| Straddle Carrier (containers) | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tow Tractor (Trailer spotter) | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Excavators/Backhoes | 4 | 1 | 2 | 0 | 1 | 0 | 0 | 0 | 1 | 1 | 2 | 0 | 0 |
| John Deere Tractor (with forks) | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 |
| Laser Guided Vehicle (with forks) | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Annual Totals** | **22** | **12** | **12** | **6** | **13** | **6** | **10** | **9** | **7** | **14** | **10** | **6** | **9** |

Other agencies have also noted fatalities caused by PIVs. In June 2001, the National Institute for Occupational Safety and Health (NIOSH) issued Alert Publication No. 20010-109 (Preventing Injuries and Deaths of Workers Who Operate or Work Near Forklifts). The publication states "In the United States, 1,021 workers died from traumatic injuries and over 200,000 others were seriously injured in forklift related accidents from 1980 to 1994." The National Traffic Occupational Fatalities Surveillance System (NTOF) uses death certificates to identify work-related deaths. These fatalities resulted from the following types of accidents.

| Type of incident | % total victims |
|---|---|
| Forklift overturns | 22 |
| Worker on foot struck by forklift | 20 |
| Victim crushed by forklift | 16 |
| Fall from forklift | 9 |

NIOSH recommends that employers and workers comply with OSHA regulations and consensus standards, maintain equipment, ensure comprehensive worker training, and institute systematic traffic management to prevent forklift accidents. This emphasis program will enable Region V Area Offices to increase the awareness of employers, ensure proper training of employees, the required operation, inspection and maintenance of powered industrial trucks, along with compliance with OSHA regulations and all other applicable consensus standards.

OSHA Region V will target and evaluate the hazards of Powered Industrial Vehicles (PIVs) through this LEP.

VII.   **Action.** Region V Area Directors shall ensure that the procedures outlined in this Notice are followed and adhered to in the scheduling of inspections under this LEP. OSHA Compliance Officers shall ensure that the procedures contained in this Notice are followed when conducting inspections related to this program. Area Directors shall ensure that the State Consultation Program Manager is notified of the procedures to be used in the conduct of inspections under this LEP.

VIII.  **Procedures.** The following procedures will be used when scheduling and conducting inspections under this LEP.

A.   Inspection Goals. Region V Area Offices shall conduct inspections under this program through the Fiscal Year this program is active. Inspections of all General Industry and Construction worksites utilizing powered industrial vehicles will be expanded to include powered industrial vehicle hazards and equipment.

B.   Selection and Scheduling of Complaints and Referrals. The Area Offices will identify and schedule for inspection all serious complaints and referrals, alleging a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal "struck/caught/fall hazard" associated with the

operation of a powered industrial vehicle (e.g., struck by falling load, struck against, caught between, caught in, or fall hazard) in general industry or construction. The inspection will address all complaint items, all aspects of the powered industrial truck standard, powered industrial vehicles and associated hazards, collection of OSHA 300 data and hours worked for the previous three years plus the current year, an evaluation of the employer's safety and health program in accordance with the FOM, an evaluation of safety and health hazards at the employer's loading dock or other designated loading and unloading areas where powered industrial vehicles are used (including loading docks, shipping and receiving areas, yard areas, and other locations where vehicles are loaded and unloaded.)

C.    Data Collection.    The Area Offices will collect data from OSHA 300 logs for the previous three calendar years plus the current year from all employers inspected under this program that are required to maintain them. The data, which will include the totals from all the columns of the 300 log and the total hours worked by all employees for these years, will be used to assist in the evaluation of the program.

D.    Deletion Criteria.    OSHA Instruction CPL 02-00-025, *Scheduling Systems for Programmed Inspections*, will be adhered to in the implementation of this program.

IX.    **OIS Coding.** The OSHA-1 form for all inspections conducted in establishments that are covered by this program shall be coded in Block 25c, Local Emphasis program, with "PIV."

X.    **Outreach.** Appendices 1 and 2 may be used for outreach.

Notification of major users of powered industrial vehicles as well as distributors of the equipment will be accomplished via outreach mailing, electronic mailing, and presentations.

XI.    **CSHO Protection.** Inspections conducted under this Notice will occur in a broad range of general industry and construction establishments. Inspections under this LEP are to be conducted by CSHOs who have received training on the LEP and the hazards of the industry most likely to be encountered. Compliance Officers shall establish the presence of hazardous substances prior to initiating the walk-around portion of the inspection, relying on information such as previous inspection histories, safety data sheets, and/or previous exposure monitoring surveys.

XII.    **Evaluation.** The Naperville Area Office will prepare a written evaluation of this LEP in the format specified by OSHA Instruction CPL 04-00-001. Evaluations will be submitted annually for the previous Fiscal Year.

**Appendix 1**
 **Powered Industrial Vehicles Information Package**

**Powered Industrial Vehicle Fatalities in Illinois, Ohio, and Wisconsin**

| Powered Industrial Vehicle | FY 06 | FY 07 | FY 08 | FY 09 | FY 10 | FY 11 | FY 12 | FY 13 | FY 14 | FY 15 | FY 16 | FY 17 | FY 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Forklifts (includes walkies) | 15 | 10 | 9 | 5 | 9 | 5 | 7 | 8 | 5 | 10 | 7 | 3 | 5 |
| Skid steers/Bobcats | 3 | 1 | 0 | 1 | 3 | 0 | 1 | 1 | 1 | 2 | 1 | 2 | 3 |
| Straddle Carrier (containers) | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tow Tractor (Trailer spotter) | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 |
| Excavators/Backhoes | 4 | 1 | 2 | 0 | 1 | 0 | 0 | 0 | 1 | 1 | 2 | 0 | 0 |
| John Deere Tractor (with forks) | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 |
| Laser Guided Vehicle (with forks) | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Annual Totals** | **22** | **12** | **12** | **6** | **13** | **6** | **10** | **9** | **7** | **14** | **10** | **6** | **9** |

**Powered Industrial Vehicle Evaluation Points**

1. <u>Forklifts:</u>

   ❖ Equipment and training
   ❖ Truck and traffic control and controlling speed
   ❖ Powered industrial truck driving – Note that tip-overs occur most frequently when the truck is driven in reverse and turned with mast elevated
   ❖ Seat belt use
   ❖ Fall protection tie-offs for order picking at heights in warehouses to prevent fall deaths
   ❖ Maintenance practices – blocking/cribbing when a lift is jacked up to prevent crushing deaths
   ❖ Maintenance practices – blocking mast and upright when working around mast to prevent caught between deaths
   ❖ Dock safety program to prevent struck by/crush by deaths
   ❖ Use of approved lifting platform secured to forks to prevent fall deaths
   ❖ For open lifting platforms used in warehouse stocking, use of appropriate tie-off fall protection to prevent fall deaths
   ❖ Lifting carriage amputation protection (chains/moving parts)

Photo: overturn after driven off dock, seat belt not worn, fatality



Photo: approved lifting platform with guardrails and metal mesh guard



2.  Excavators/backhoes

    ❖ Prevention of overhead loads to prevent struck by load deaths
    ❖ Swing radius protection to prevent caught between deaths
    ❖ Operator and pedestrian worker training and communication to prevent struck by
       deaths
    ❖ High visibility clothing for pedestrian employees
    ❖ Chains and rigging for lifting loads to prevent struck by load deaths
    ❖ Riding in bucket or on side of excavator to prevent fall deaths
    ❖ Powerline program to prevent electrocution deaths
    ❖ Quick coupler program to prevent struck by excavator bucket deaths (see SHIB on
       OSHA website: **"Hazards of Inadequately Securing Hydraulic Excavator Buckets
       When Using Quick Coupling Devices"**,
       http://www.osha.gov/dts/shib/shib072205a.html.

    Photo: quick coupler and buckets

    

3.  Front end loader

    ❖ Chains and rigging for lifting loads to prevent struck by load deaths
    ❖ Operator and pedestrian worker training and communication to prevent struck by
       vehicle deaths
    ❖ High visibility clothing for pedestrian employees

4.  Skid steer/bobcat

    ❖ Driver and pedestrian worker training to prevent struck by vehicle deaths
    ❖ Seat belt use
    ❖ Safety interlocks not bypassed or malfunctioning
    ❖ Driver training to keep head and body inside driver cockpit to prevent caught between
       deaths
    ❖ Reference: NIOSH Alert "Preventing Injuries and Deaths from Skid Steer Loaders,"
       Publication #98-117, 2/98

5.  Scraper/grader

    ❖ Operator and pedestrian worker training and communication to prevent struck by
       vehicle deaths
    ❖ High visibility clothing for pedestrian employees

# Appendix 2

## Dock Safety Plan



# Contents of the Loading Dock Safety Program

1. Regulatory Standards
2. General Company Policy
3. Responsibility
4. Vehicles/Pedestrian Traffic Flow within the Property
5. Signage in the Yard.
6. Illumination – Visibility
7. Driver Check-In
8. Acceptance of the Load
9. Spotting the Trailer into the Dock Bay
10. Securing Trailer to the Dock (Dock Plates-Levelers)
11. Secure Trailer to Preventing Unscheduled Departures
12. Entering/Exiting Trailers – Loading or Unloading Trailers
13. Releasing the Trailer Back to the Driver or Yard Jockey
14. Inspection, Reporting and Maintenance Procedures
15. Training of Personnel
16. Housekeeping for Loading Docks
17. Environmental Conditions
18. Working/Walking Surfaces at Dock Areas and Dock Edge
19. Emergencies
20. General Rules
21. References
22. Revisions
23. Disclaimer

## Regulatory Standards

OSHA - 29 CFR 1910.178 (Powered Industrial Trucks)
OSHA - 29 CFR 1910.176 (Materials Handling)
OSHA - 29 CFR 1910.30 (Dockboards)

## General Company Policy

It is the objective of the XYZ Company to provide our workers and truck drivers with a safe environment. Injuries sustained when lift trucks tip over or fall from docks, or those that occur when pedestrians are impacted by a lift truck, falling load, or tractor-trailer, tend to be very serious and often fatal. Prevention of these types of accidents can be achieved through proper equipment, proper training, and enforcement of safe operating procedures.

XYZ Company will ensure that all loading docks within our facility(s) are evaluated. This Dock Safety Program intends to address comprehensively the issues of; evaluating and identifying potential deficiencies, evaluating the associated potential hazards, communicating information concerning these hazards, and establishing appropriate procedures, protective measures, and corrective measures for employees.

A comprehensive inspection and maintenance program will maintain the facility and equipment in proper operating condition.

The prevention of employees crushed and struck-by hazards created by delivery vehicles, semi-tractor and trailer, and private vehicles starts at the property line where the delivery vehicle enters. This program will address rules regarding the yard, delivery vehicle and the facility's dock area.

## Responsibility

_____ is responsible for implementation and operation of this program. He/she has full authority to make necessary decisions to ensure success of the program. _____ will review this policy at least annually.

_____ will conduct a job safety hazard analysis of all types of tasks dock employees perform and determine the extent of their exposure to hazards.

All employees are authorized to halt any operation on the dock where there is danger of serious personal injury. Employees are to report hazards, damaged or missing equipment to the supervisor immediately.

Supervisors are to monitor work practices to assure compliance with safety rules and enforce discipline policy.

## Vehicles/Pedestrian Traffic Flow within the Property

The following types of traffic at this facility are: Incoming and Outgoing Semi-Tractor and Trailers, Straight Delivery Trucks, Powered Industrial Vehicles and Private (employee) Vehicles. XYZ Company has established a Traffic Flow Plan for entering, maneuvering within and exiting the property/yard. Traffic will be eliminated, separated or controlled by:
_____ (*Draw Facility Map*)

Pedestrians enter the traffic / yard area when workers enter or leave the employee parking lot or travel to the storage yard. Pedestrians will be separated or controlled away from motorized traffic by: _____
(See Facility Map)

If traffic needs to interface (back-up/park) with Public Property (street/sidewalk), then the following precautions have been taken: _____

Various surface encumbrances have been identified. Obstacles, fixed structures, overhead clearance issues along with tight maneuvering/cornering have been pointed out in the facility map, signage, barriers and/or reflective tape.

The following have been considered as means of eliminating, separating and/or controlling the conflict between vehicles or vehicle and pedestrians or obstacles.

- Shipping & Receiving Separated from Employee Parking Lot
- One-Way Traffic Flow or Lanes
- Traffic Lanes with Visible Lines Painted
- Physical Barriers Between Pedestrian & Vehicle Travel Path
- Remove Obstacles or Re-Locate Out of Traffic Lanes
- Additional Concrete Barriers-easily identified by Paint or Reflectors-for Fixed Objects
- Prohibit Pedestrian Traffic in High Risk Areas
- Designated Pedestrian Crossing Points

## Signage in the Yard

Signs and markings have been posted for the speed limit of _____ mph. Clear directions and signage will be provided for truck drivers and visitors. Pedestrians will have designated and marked walkways and crossing points with warning signs for both vehicles and pedestrians.

## Illumination – Visibility

The yard lighting will be adequate for all seasons and shifts. Yard workers will wear high visibility vests. Vehicles, Powered Industrial Vehicles and Delivery Trucks will have their appropriate lights on to remain visible. Parking lot lighting will be in accordance with ANSI/IESNA RP 7-01. 5.

**Driver Check-In** Review OSHA's Multi-Employer Worksite Policy.

The signage will clearly indicate to the driver where or how to report to the loading dock. The driver will be given basic instructions on the Rules and Procedures at this Facility such as PPE, Hi-Vis Vest, Spotter, etc.

Instructions will be given as to how to proceed to the dock area or the next step. The driver will be given instruction on live-loading if permitted.

**\*\*\*Best Practice\*\*\* Drivers' Permit valid for 1 Year at your facility.**
**\*\*\*Best Practice\*\*\* Security check point for Drivers' site instructions.**

## Acceptance of the Load

If an XYZ worker is to open the door(s) of the delivery vehicles/trailer, the worker needs to anticipate that the load had shifted. Several methods are used to prevent shifting loads such as airbags and temporary bulk heads. If there is pressure against the door, the material is likely to be pushed up against the door and could fall out when the doors are opened.

This type of door has their own hazards: Roll-up or Swinging Doors. Swinging doors can be caught by the wind and pulled out of the worker's arms or knock over the worker.

Unlatching or untarping loads from flat beds can cause the product to roll off the trailer and onto the worker. (Release of stored energy, see DOT Cargo Securement Standard 49 CFR 373.)

**\*\*\*Best Practice\*\*\* Use soft sided trailers in lieu of tarping.**

A fall hazard exists when walking on top of the flatbed trailer and/or load or climbing on top of a tanker truck.

**\*\*\*Best Practices\*\*\* Use fixed elevated platforms in the dock bay.**
**\*\*\*Best Practices\*\*\* Use Harness/Lanyard with engineered fall restrains.**
**\*\*\*Best Practices\*\*\* Use Portable stairway.**

The XYZ shipping and receiving worker will verify the materials being delivered, check for shifted loads, rodents, insects, debris, damaged products, spills, or leaks. (See DOT Emergency Response Guidebook) If chemical(s) have leaked, report to your supervisor and consider that the trailer may have a hazardous atmosphere. SDS (Safety Data Sheets) for chemicals being shipped in is to be on file at this facility or accompany the shipment of the chemical.

The XYZ shipping and receiving worker will perform an inspection of the trailer to ensure that the trailer is safe to board and load/unload product. Perform a visual inspection of the trailer prior to driving a lift truck into it. Damaged and rotting floorboards are common in older trailers.

Ensure tandems are slid and locked in a safe position to board and prevent collapse or upending. XYZ employees are not to assist in sliding and locking tandem wheels into position. That is the truck driver's responsibility.

## Spotting the Trailer into the Dock Bay

Employees are prohibited from standing/working behind, underneath or in close proximity to moving trailers, or trailers that have the potential to move. If we are required to install or remove security seals for truckloads and containers you should do this in a safe area away from the dock. Never stand between a trailer and the dock.

Truck Drivers or Yard Jockeys are prohibited from coupling or moving trailers in the dock or yard area until the driver has effectively verified, or another employee has effectively verified

and communicated to the driver, that all employees and equipment have been removed from the trailer and surrounding areas.

Employees servicing as spotters for truck drivers will have established the method and means of communication between truck driver and dock personnel such as verbal, hand signals and radios. Spanish/English language issues need to be effectively addressed.

To prevent crushing and struck by hazards between loading dock walls and moving trailers, employees are prohibited from standing/working near the edge of the dock, when trailers are moving, or have the potential to move. This includes using a dock lock pole tool at the edge of the dock to secure and release "live load" trailers from the dock.

Spotters and other yard personnel will wear reflective clothing or vests to increase their visibility.

The dock positions will be well marked to help drivers' spot trailers more accurately. Lighting will be provided to aid in the driver's visibility.

**\*\*\*Best Practice\*\*\* To help the driver line up on the dock, paint a yellow line along the path of the outside of the tire.**

<u>**Securing Trailers to the Dock**</u>

Trailers will be inspected for the following before any loading begins:

- Proper "seating" against the loading platform (Dock Bumpers)
- Docking plate secure, and properly in place
- Wheel chocks in place and secure

Trailer Floor Loading. The interior floor of trailers will be inspected for a safe and serviceable condition before loading begins. Trailer nomenclature plates or driver will be inspected/consulted to determine the safe load capacity before loading begins.

Perform a visual inspection of the trailer prior to driving a lift truck into it. <u>Damaged and rotting floorboards</u> are common in older trailers. Keep the dock and trailer areas clean and free of debris. Loading areas should be completely swept as required to keep area free from debris. Large pieces of debris such as broken pieces of pallets should be picked up immediately.

Ensure adequate clearance of loading equipment and materials when entering/exiting dock door and trailer.

## Dock Levelers

Dock levelers provide a bridge to the trailer as well as a ramp to facilitate the transition in height from dock to trailer. Dock levelers are rated by weight capacity and by the service range. The service range also known as the height differential rates the safe range above and below dock level. You can use the leveler to transition to the trailer height. Differences in trailer width, height, floor level and the recent popularity of air-ride suspensions are forcing more attention on the functionality of dock levelers and their ability to safely handle the variety of vehicles serviced. Dock levelers must return to the proper position after use.

The advantages in using automatic dock equipment with electronic controls include the ability to incorporate all of the equipment into signaling devices. Signaling devices such as signal lights will let your lift truck operators know that the restraint mechanism and the dock leveler are properly engaged signaling that it is now safe to enter the trailer, while at the same time signaling the truck driver that it is unsafe to pull away from the dock.

Dock levelers will be routinely maintained by personnel familiar with the hazards and operation of the dock levelers. (ANSI MH30 Series – Safety Labeling)

## Portable Dock Plates

Portable dock plates shall be secured in position, either by being anchored or equipped with devices which will prevent their slippage or horizontal thrust. The dock plates will be strong enough to carry the load imposed on them. Handholds, or other effective means, will be provided on portable dock plates to permit safe handling.

Portable dock plates will be kept free of oil, grease and water. They will be stored in a safe place when not in use.

## Securing Trailers

Computer Tool for Safety Assessment at Loading Dock Positive mechanical means to secure trucks or trailers to a loading dock is allowed provided the system is installed and used in a manner that effectively prevents movement of trucks and trailers during loading, unloading and boarding by hand trucks and powered industrial trucks.

## Spotted Trailers

XYZ Company requires portable jack stands to be used in addition to the forward landing gear of spotted trailers when loading and unloading to prevent potential tipping. Also note that spotted trailers (dropped trailers) are more susceptible to trailer creep.

## Preventing Creeping or Dock Slippage

Trailer creep (also known as trailer walk, dock walk) occurs when the lateral and vertical forces exerted each time a lift truck enters and exits the trailer cause the trailer to slowly move away from the dock resulting in separation from the dock leveler. Factors that affect trailer creep are the weight and speed of the lift truck and load, the grade of the drive the trailer is parked on, the softness of the suspension, the type of transition (dock levelers, dock boards) being used, and whether the trailer has been dropped off (spotted) or if it is still connected to the tractor. Apply Brakes and Chock Wheels.

## Preventing Unending ("Pop-Up") or Gear Collapse

Install Jack Stand on uncoupled trailers and Chock Wheels.

## Preventing "Unscheduled Departure" by the Driver

## Wheel Chocks

Wheel chocks are wedge-shaped blocks placed in front of the rear wheels of a trailer to help prevent the trailer from moving away from the dock while the trailer is being loaded or unloaded.

OSHA regulations require the use of wheel chocks or other vehicle-restraining device when loading and unloading trucks and trailers. Depending on the surface conditions and type of chock being used chocks can sometimes slip thus reducing their effectiveness in preventing trailer movement. Also, requiring people to walk in between trailers to set and remove the wheel chocks creates additional safety issues. When using wheel chocks XYZ requires lift truck operators to verify the chocks are in place. We keep spare chocks on hand.

## ICC Bar Vehicle Restraint Devices

The docks at XYZ are equipped with ICC bar type restraint system or "dock locks". These systems incorporate a device that engages the ICC bar (rear impact guard) on the rear of the trailer preventing it from moving away from the dock. These devices are hydraulically operated. ICC bar systems may not work with damaged ICC bars, lift gates, and low-boy trailers. If the ICC bar restraint is not operational or the trailer's ICC bar is damaged, we require the use of wheel chocks.

Installation of a dock lock for the trailer ICC bar (on back of trailer) that locks the trailer in place and indicates visually (red or green light indicator) current lock/unlock status of the trailer.

- Prohibiting employees from manually operating dock locks ("hands on"), or being in close proximity to them while in operation.

- Procedures to follow when dock locks will not release a trailer. Remove malfunctioning dock locks from service until proper assessment and maintenance is accomplished by qualified personnel.

- Determine cause(s) of and prevention methods for dock locks malfunction.
- Routinely inspect and maintain dock locks, assuring proper greasing and lubrication is performed and that they are kept free of debris.
- Train personnel on recognition of structural characteristics of trailers that may interfere with normal dock locks operation.
- Routinely inspect, maintain and replace dock bumpers, to facilitate proper alignment and securing of trailers in dock locks.

## Forms of Lockout

Install a lock on air brake hoses of parked trailers being loaded/unloaded that assures truck driver of entering building to obtain key from shift supervisor (such as "The Salvo Process" or "Glad Hand") which will not allow air back into the trailer to release the trailer brakes, making it impossible for the trailer to be moved until released.

Wheel and ICC Bar restraints are a method of mechanically holding the trailer to the dock.

Install a pin lock on trailer (where cab hitches to trailer) that will mandate the driver to obtain a key from the shift supervisor.

Take the Truck Drivers' Ignition Key.

## Administrative (less effective)

A system is established for notifying truck drivers when it is safe to enter and exit the dock area. Sample methods include:

- Don't allow truck driver in the cab
- Don't release the Driver's Paperwork until completed and verified that the process with the trailer finished
- Place a "STOP" sign – mounted on a movable post – in front of the truck
- Stop/go lights on the inside and outside of docks informing truck drivers and PIT operators when it is safe to enter and exit the dock and trailer areas and/or
- Dock doors are to be down when trailers are moving in and out of the dock

## Entering/Exiting Trailers – Loading or Unloading Trailers

Lift trucks used to load/unload trailers are equipped with spotlights. Also dock mounted lights are used to supplement the lift truck lights or when manually loading/unloading trailers.

Do not allow pedestrians in trailers while a lift truck is loading/unloading. The likelihood of being crushed by a forklift is greater in tight spaces. Caution is advised when manually unloading/loading inside trailers with heavy, vertical, shifting product.
Caution is advised when using lift trucks to unload straight trucks (small delivery trucks). When loading/unloading a straight truck, ensure it has the capacity to handle the weight of the lift truck

and loads. It is recommended to use a hand pallet jack rather than lift truck to unload straight trucks whenever feasible.

DOT's Cargo Securement Rule – 49 CFR 393- must be followed for identified cargo such as concrete pipe, metal coils, paper rolls, logs, and dressed lumber.

The Powered Industrial Vehicle should honk horn when exiting the trailer.

**Releasing Trailer back to the Driver or Yard Jockey**

A visual Inspection will be conducted by _____ to verify that all operations for that trailer are complete: dock plates/levelers removed, dock door closed, workers are clear, ICC restraint removed with proper signal lights displayed, wheel chock removed and then the completed paperwork is given to the truck driver or yard jockey. The truck driver will honk horn prior to pulling away.

**Inspections, Reporting and Maintenance Procedures**

Regular maintenance and care of dock equipment is essential for economy, utilization, and most importantly, employee safety. A preventative maintenance and safety inspection program will be established based on manufacturer and OSHA guidelines. Periodic self-inspections will be conducted by _____.

The dock bay and driving surface shall be kept free of potholes, well drained, and free of ice and snow. Blacktop surfaces will be monitored during excessive heat spells for possible collapse or deterioration.

All mechanical equipment installed will be maintained and used as recommended by the manufacturer. Any damaged mechanical equipment will be removed from service immediately. Dock Plates and Dock Levelers will be inspected and maintained as described in ANSI MH30.2. Only authorized and trained maintenance workers will be allowed to work on a dock lock when it will not release a trailer. The procedure will include effective communication between dock personnel, yard personnel and truck drivers. Spanish/English language issues need to be effectively addressed.

Dock bumpers will be of sufficient length to prevent the lowest of trailers from striking and damaging the building. The dock seals fit tightly and are designed to fit all sizes of trailers. Seals will be replaced when damaged. The widths of the dock doors are wide enough to accommodate the larger trailers.
Damage to the building, flooring, and driving surfaces will be corrected. Caution paint and other warnings will be visible and legible.

Overhead doors will be tested periodically to ensure that the automatic reversing sensor is operational.

Any hazard recognized shall be reported and tracked to completion per XYZ's company policy. All inspection deficiencies will be noted and tracked to completion.

**Training of Personnel**
Train all affected employees (management, dock workers, yard jockeys, maintenance, and misc. personnel) on all established safety procedures and recognition of hazards. Communicate procedures to all employers on site, including contract truck drivers.

Only trained and authorized personnel will be allowed in the dock area. Employees will be thoroughly trained in safe dock practices. Maintenance personnel will be trained in the hazards of the specific dock equipment.

Train dock personnel on recognition of structural characteristics of trailers that may interfere with normal dock lock operation.

Train all affected employees and maintenance personnel on "dock lock malfunction" as described above and proper lockout procedures.

Use job safety hazard analysis to train employees for the types of tasks dock and yard employees perform and determine the extent of their exposure to hazards.
Documentation of training will be maintained by the safety coordinator.

**Housekeeping for Loading Docks**

All receiving areas and loading dock surfaces shall be kept clean, orderly, sanitary, and free of known hazards. Debris such as strapping, banding and broken pallets will be picked up immediately.
The floor surfaces of these areas shall be maintained in a clean and, so far as possible, a dry condition. Where wet conditions exist, drainage shall be maintained.

To facilitate safety, dock areas shall be kept free from protruding nails, splinters, holes, or loose boards or other hindrances that could cause tripping or other hazards.

**Environmental**

Lighting conditions will be considered for all times of the day and seasons. Dark or low lighting conditions can be as difficult to see as with bright sunshine or glare. Particular care is needed when transitioning between the bright and dark conditions. Lighting will be adequate and appropriate for inside and outside the dock area along with inside the trailer.

Extreme summer and winter weather can create wet, icy or snow covered docks. Water can back up due to frozen, blocked, or overwhelmed (down pour) drainage systems. Potholes result due to extreme weather. Asphalt can give way in excessive heat.

Hazardous atmospheres can be caused by semi-truck and powered industrial vehicle (PIV) exhaust. Don't allow trucks to idle while loading (drop trailer and idle elsewhere). The internal

combustion PIVs will be tuned-up using tailpipe emissions testing on a quarterly basis.

## Working/Walking Surfaces at Dock Areas and Dock Edge

To prevent falling or stepping off the dock edge, the dock doors will be closed when not in use to prevent "Distracted Walking" or "Distracted Driving". When docks are not being used to load/unload trucks, the dock doors must be closed to comply with fall protection policies. Screens, railing, or barriers may be used in place of the dock doors. Covers and/or guardrails shall be provided to protect personnel from fall hazards in dock areas. Dock areas will be properly guarded, covered, cordoned off, or marked, to prevent injury.

Stairs will be provided as access into the building and personnel will not be allowed to go through the dock doors to get in or out of the building. "Dock Jumping" is prohibited. Do not climb on docks or place any part of your body outside of the dock door. If you need to go down into the dock area make sure you use the stairs provided. Stairways and/or access ladders in dock areas will be properly installed and maintained.

Floor openings in truck receiving locations will be covered with a grid or floor hole cover when not in use. (Bottom dump bulk material trucks)

Do not back the PIV towards the edge of the dock.

## Ramps and Passageways in Dock Areas

Where mechanical handling equipment is used, sufficient safe clearances will be maintained for ramps, aisles, at loading docks, through doorways and wherever turns or passage must be made. Aisles and passageways shall be kept clear and in good repair, with no obstruction across or in ramps and aisles that could create a hazard. Concrete curb follows along the ramp edge to prevent driving off the ramp.

Permanent ramps, aisles and passageways shall be appropriately marked.

***Best Practice*** Window in the dock door to see if a trailer is backed in

***Best Practice*** Flip Up Gate available to prevent back overs by PITs

***Best Practice*** Paint dock edges bright yellow to highlight the edge as warning

## Emergencies

Along with emergencies that could occur in the facility, dock personnel will be trained in dock specific emergencies such as spills, hazardous materials in trailers, propane leaks, carbon monoxide, or dealing with crushing injuries. (See Facility's Emergency Action Plan 1910.38)

| Man Made | Natural |
|---|---|
| Hazardous Materials | Extreme Cold, Snow, Ice |
| Accident | Fire from Lightning |
| Fire: Chemical or Combustible Material | Flood |
| Major Gas or Water Main Breaks | Earthquake, Earth Slide, Mud Slide |
| Pipeline Explosion | Storm Surge |
| Terrorism - Vandalism | Tornado, Hurricane |
| Strikes | High Winds, Sand and Dust Storms |

Dock personnel will be trained in and have ready access to the Emergency Response Guidebook http://www.tc.gc.ca/canutec/en/guide/ergo/erg2008eng.pdf to ensure that they are aware of the contents of incoming trucks and be aware of what to do in an emergency.

SDS (Safety Data Sheets) for chemicals being shipped in are to be on file at this facility or accompany the shipment of the chemical.

Emergency exit doors will be kept free of any obstacles, including material being loaded and unloaded, at all times. Any employee finding an emergency door blocked should immediately report the condition to _____ for correction and/or remove the obstacle. Exit lights and signs will also be maintained in proper condition at all times and immediately reported if deficient.

Map for the Dock area will point out specific locations of hazards or emergency equipment such as fire extinguisher, emergency lighting, alarms, eye wash and spill kit. Piping for water, gas, chemicals, etc. will be clearly marked and located in a manner that would allow adequate clearance for the load. Evacuation routes clearly identified.

## General Rules

See Company's Powered Industrial Vehicle or Truck Policy for more specific rules for operation of vehicles such as requiring the use of seat belts, horns and mirrors.

The dock area will be clear of stored material and other obstructions. Debris will be picked up immediately. Safe standing areas and walking routes have been designated for visitors.

Speed limit on the dock and surrounding area is _____ mph.

Limit the stacked height of materials in staging areas, especially if pedestrians will be working around the material. Also leave sufficient access aisles between rows of staged material if employees may be required to inspect or otherwise access the material.

Special attention should be given when large loads are being handled that may obstruct the view of the lift truck operators. While normally a lift truck operator would be driving in reverse with these loads, this option is not available when loading trucks. Both lift truck operators and pedestrians working in the loading area must be aware of this.

**References**

Computer Tool for Safety Assessment at Loading Dock
the Institut de recherche Robert-Sauvé en santé et en sécurité du travail (IRSST)
http://www.irsst.qc.ca/en/_outil_100044.html

FMCSA/DOT Cargo Securement Rule: 2002   49 CFR 393.106
http://www.fmcsa.dot.gov/rules-regulations/truck/vehicle/cs.htm

National Safety Council's Motor Fleet Safety Manual, Chapter 7 "Employee Safety Program" and Chapter 14 "Job Safety Analysis", 4th Edition, 1996, 1121 Spring Lake Drive, Itasca, IL 60143-3201, www.nsc.org

Emergency Response Guidebook-2008 Developed by: Transport Canada (TC), the U.S. Department of Transportation (DOT), the Secretariat of Transport and Communications of Mexico (SCT)

http://www.tc.gc.ca/canutec/en/guide/ergo/erg2008eng.pdf


Loading Dock Equipment Manufacturers Product Section of The Material Handling Industry of America:    ANSI MH30 Series of Standards:

www.mhiastore.org **or** www.mhia.org

**OSHA References:**

OSHA CPL 04-00 (LEP 002) Local Emphasis Program for Powered Industrial Vehicles -- Region V

03/07/1996  - Use of seat belts on powered industrial trucks

http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=22105

CPL 02-01-028  Compliance Assistance for the Powered Industrial Truck Operator Training Standards
http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=DIRECTIVES&p_id=2277

CPL 02-01-030  Chocking of Tractor Trailer under the Powered Industrial Truck Standard
http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=DIRECTIVES&p_id=1533

OSHA STD: 1910.30(a): Commercial Standard CS202-56 (1961) "Industrial Lifts and Hinged Loading Ramps"

http://ts.nist.gov/Standards/Conformity/upload/wdrw-cs202-56.pdf

Powered Industrial Trucks. - 1910.178

https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=STANDARDS&p_id=9828

OSHA CPL 02-00-124 Multi-Employer Citation Policy

http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=DIRECTIVES&p_id=2024

**Revision History**

| I.   Document Number | Revision | Revision Date | Revised By | Reason |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Disclaimer**

- This information has been developed by an OSHA Compliance Assistance Specialist and is intended to assist employers, workers, and others as they strive to improve workplace health and safety. While we attempt to thoroughly address specific topics *or hazards*, it is not possible to include discussion of everything necessary to ensure a healthy and safe working environment in a presentation of this nature. Thus, this information must be understood as a tool for addressing workplace hazards, rather than an exhaustive statement of an employer's legal obligations, which are defined by statute, regulations, and standards. Likewise, to the extent that this information references practices or procedures that may enhance health or safety, but which are not required by a statute, regulation, or standard, it cannot, and does not, create additional legal obligations. Finally, over time, OSHA may modify rules and interpretations in light of new technology, information, or circumstances; to keep apprised of such developments, or to review information on a wide range of occupational safety and health topics, you can visit OSHA's website at www.osha.gov.

*This document is designed to assist dock managers in the development, maintenance, and updating of a comprehensive dock safety program and to provide assistance in finding useful safety information.*



**U.S. DEPARTMENT OF LABOR**     **Occupational Safety and Health Administration**

| | |
|---|---|
| **DIRECTIVE NUMBER:** CPL 04-00 (LEP 008) | **EFFECTIVE DATE:** October 1, 2018 |
| **SUBJECT:** Emphasis Program for Fall Hazards in Construction and General Industry | |
| **REGIONAL IDENTIFIER:** Region V | |

## ABSTRACT

**Purpose:**

The purpose of this Regional Emphasis Program is to address serious Fall Hazards in General Industry and Construction.

**References:**

A) CPL 02-00-160, Field Operations Manual (FOM), August 2, 2016.
B) CPL 04-00-002 Procedures for Approval of Local Emphasis Programs (LEPs), November 13, 2018.

**Cancellations:**

This Instruction cancels the Regional Emphasis Program for Fall Hazards in Construction and General Industry, CPL 04-00 (LEP 008) that was made effective on October 1, 2017.

**Expiration:**

This instruction expires September 30, 2023.
EXCEPTION: Any inspection begun prior to September 30, 2023 may continue until its conclusion.

**State Impact:**

None

**Action Offices:**

All Area Offices in Region V

**Originating Office:**

Enforcement Programs

**Contact:**

Assistant Regional Administrator
Enforcement Programs
U.S. Department of Labor – OSHA
230 S. Dearborn Street, Room 3244
Chicago, Illinois   60604
(312) 353-2220

By and Under the Authority of


Ken Nishiyama Atha
Regional Administrator

I. **Purpose**. This Instruction continues a Local Emphasis Program (LEP) for Fall Hazards in General Industry and Construction.

II. **Scope.** This Instruction applies to all Region V Area OSHA Offices.

III. **References.** CPL 02-00-160, Field Operations Manual (FOM).

IV. **Expiration.** This Instruction expires September 30, 2023.

V. **Cancellation.** This Instruction cancels the Regional Emphasis Program for Fall Hazards in Construction and General Industry, CPL 04-00 (LEP 008) that was made effective on October 1, 2017.

VI. **Action.** The Area Offices will implement the procedures described in paragraph IX of this Instruction in response to imminent dangers or serious fall hazards that are identified in general industry or construction sites.

VII. **Policy.** The Area Directors shall use the LEP as described herein as the basis for scheduling and conducting safety inspections of construction and general industry workplaces where fall hazards have been alleged and/or identified to initiate safety inspections. Construction inspections may be expanded to comprehensive inspections of multi-employer sites in accordance with the guidelines established in the FOM.

VIII. **Background.** Nationally, accidents relating to falls from elevations are one of the leading causes of serious injuries and fatalities. In Region V, over a three year period (FY 2016 – FY 2018), there have been 90 fatalities resulting from falls from elevations. Based on OSHA's experience, a Local Emphasis Program that increases awareness and accelerates enforcement activity reduces injuries. It is also recognized that a tracking mechanism for these types of inspections would prove beneficial in monitoring the area of fall hazards. This LEP is designed to increase inspection activity, provide tracking, enhance training and outreach, and formalize procedures. It will also serve as a means of conducting enhanced outreach regarding ladder safety.

IX. **Procedures.** The following procedures will be used in targeting, scheduling and tracking inspections conducted under this LEP.

Construction: An inspection targeting system which encompasses identification of sites at the beginning of the quarter and the random selection of sites is not practical. Hazards related to falls on construction sites are normally transient and of limited duration. This limits the practicality of targeting the site in advance. Therefore, inspections conducted under this LEP would be initiated by several means: Compliance Officers' observations, non-formal complaints, and referrals from other outside sources.

Area Directors will upgrade non-formal complaints alleging serious fall hazards. The unsafe use of portable or fixed ladders will also be included. The Area Director shall determine, as part of the annual operating plan, the projected number of inspections to be

conducted under this LEP during the Fiscal Year.

All work sites where fall hazards are observed by Compliance Officers (CSHOs) will be selected for inspection under this LEP. Activities which constitute potential falls and no protective systems are in use may include steel erection, masonry construction, roofing, open-sided floors and wall openings, bridge repairs, signs, water towers, communication towers, sites where suspension scaffolds are in use and other activities where employees are working from elevations without fall protection. The unsafe use of portable or fixed ladders will also be included.

When a job site with fall hazards is noted during travel, the CSHO will notify the supervisor with the name of the contractor (if known) and the location of the site. The supervisor will determine if the site has been inspected within the last 30 days. If the site has not been inspected within the last 30 days, permission will be given to inspect the site. If the site has been inspected within the last 30 days, an inspection will be authorized only if an imminent danger appears to be present. These inspections will normally be limited to the imminent danger situation and plain view items. The CSHO will remain at the site to observe the abatement procedures and/or to assist with abatement methods. CSHOs will record these as planned LEP inspections rather than as referrals.

General Industry: Due to work generally being indoors, fall hazards cannot be addressed unless OSHA is notified of unsafe conditions by another party. Area Directors will upgrade non-formal complaints alleging serious fall hazards. The unsafe use of portable or fixed ladders will also be included. Formal complaints and referrals from outside sources will be handled through the normal inspection process.

X.      **OIS Coding.** Construction inspections conducted under this program will be coded as "Programmed Planned" in the Initiating Type tab and coded "FALL" in the Local Emphasis tab. General Industry inspections conducted under this program will be coded as appropriate in the Initiating Type tab based on the reason for the inspection and coded "Fall" in the Local Emphasis tab.

XI.     **Evaluation Procedures.** It is important that this program be evaluated in a timely manner in order to assess its potential future value and to make any necessary modification.

A. The Toledo Area Office will be the Champion of this Local Emphasis Program.

B. The Toledo Area Office will prepare a written evaluation of the LEP in the format specified by OSHA Instruction CPL 04-00-001. Evaluations will be submitted annually for the previous Fiscal Year.

C. The Toledo Area Office shall prepare and submit the final evaluation report to the ARA/EP no later than September 8th of the Fiscal Year.

XII.  **Compliance Officer Training.**  Each Area Office will be responsible for conducting training of their compliance staff that will be conducting inspections under this LEP and will provide a training evaluation and documentation to the Regional Training Committee.

XIII.  **Outreach Activities.**  This LEP, with particular emphasis on inclusion of ladders into the program, will be discussed during all outreach activities including, but not limited to, OSHA speeches and training sessions.

# Chapter 3

# INSPECTION PROCEDURES

I.    General Inspection Procedures.

The conduct of effective inspections requires judgment in the identification, evaluation, and documentation of safety and health conditions and practices. Inspections may vary considerably in scope and detail depending on the circumstances of each case.

II.   Inspection Preparation and Planning.

It is important that the Compliance Officer (CSHO) adequately prepare for each inspection. Due to the wide variety of industries and associated hazards likely to be encountered, pre-inspection preparation is essential to the conduct of a quality inspection.

A.   Review of Inspection History.

1.   Compliance Officers will carefully review data available at the Area Office for information relevant to the establishment scheduled for inspection. This may include inspection files and source reference material relevant to the industry. CSHOs will also conduct an establishment search by accessing the OIS database. CSHOs should use name variations and address-matching in their establishment search to maximize their efforts due to possible company name changes and status (e.g., LLC, Inc.).

2.   If an establishment has an inspection history that includes citations received while performing work in a State Plan State, CSHOs should be aware of this information. This inspection history may be used to document an employer's heightened awareness of a hazard and/or standard in order to support the development of a willful citation and may be considered in determining eligibility for the history penalty reduction. However, the State Plan citation may **not** be used to support a repeat violation.

B.   Review of Cooperative Program Participation.

CSHOs will access the Regional Homepage to obtain information about employers who are currently participating in cooperative programs. CSHOs will verify whether the employer is a current program participant during the opening conference. CSHOs will be mindful of whether they are preparing for a programmed or unprogrammed inspection, as this may affect whether the inspection should be conducted and/or its scope. See Section V.D., of this chapter, Review of Voluntary Compliance Programs.

C.   Safety and Health Issues Relating to CSHOs.

1.   Hazard Assessment.

If the employer has a written certification that a hazard assessment has been performed pursuant to §1910.132(d), the CSHO shall request a copy. If the hazard assessment itself is not in writing, the CSHO shall ask the person who signed the certification to describe all potential workplace hazards and then select appropriate protective equipment. If there is no hazard assessment, the CSHO will determine potential hazards from sources such as the OSHA 300 Log of Work-Related Injuries and Illnesses and shall select personal protective equipment accordingly.

2.   Respiratory Protection.

CSHOs must wear respirators when and where required, and must care for and maintain respirators in accordance with the CSHO training provided.

a. CSHOs should conduct a pre-inspection evaluation for potential exposure to chemicals. Prior to entering any hazardous areas, the CSHO should identify those work areas, processes, or tasks that require respiratory protection. The hazard assessment requirement in §1910.132(d) does not apply to respirators; see CPL 02-02-054, *Respiratory Protection Program Guidelines*, July 14, 2000. CSHOs should review all pertinent information contained in the establishment file and appropriate reference sources to become knowledgeable about the industrial processes and potential respiratory hazards that may be encountered. During the opening conference, a list of hazardous substances should be obtained or identified, along with any air monitoring results. CSHOs should determine if they have the appropriate respirator to protect against chemicals present at the work site.

b. CSHOs must notify their supervisor or the respiratory protection program administrator:
   - If a respirator no longer fits well (CSHOs should request a replacement that fits properly);
   - If CSHOs encounter any respiratory hazards during inspections or on-site visits that they believe have not been previously or adequately addressed during the site visit; or
   - If there are any other concerns regarding the program.

3. Safety and Health Rules and Practices.

   Section 1903.7(c) requires CSHOs to comply with all employer safety and health rules and practices at the establishment being inspected; CSHOs shall wear and use appropriate protective clothing and equipment.

4. Restrictions.

   CSHOs will not enter any area where special entrance restrictions apply until the required precautions have been taken. It shall be the Area Director's responsibility to determine that an inspection may be conducted without exposing the CSHO to hazardous situations and to procure whatever materials and equipment are needed for the safe conduct of the inspection.

   NOTE: Also such restrictions apply 1) to facilities where incidents of workplace violence precipitated the inspections, and 2) in industries OSHA has identified as having a high risk for workplace violence (specifically: late-night retail, social service and health care settings, and correctional facilities).

5. Workplace Violence – CSHO Training and Workplace Violence Prevention Programs.

   a. CSHO Training.

      Prior to conducting an inspection in response to a complaint of workplace violence, a CSHO must have received training that addresses the issues of workplace violence. Such training should include OSHA's 1000 Course, Area Office training or other similar course work.

   b. DOL Workplace Violence Prevention Programs.

> ➤ CSHOs should be aware and familiar with the DOL workplace violence program – http://www.labornet.dol.gov/me/worklife/dol-workplace-violence-program.htm
> ➤ CSHOs should also be aware and familiar with the OSHA Safety and Health Management System, ADM 04-00-001, (May 23, 2011).

c. Establishment Workplace Violence Prevention Programs.

If the employer is in an industry OSHA has identified as a high risk for workplace violence (such as late-night retail, social service and health-care settings, and correctional facilities) the CSHO should inquire about the existence of a workplace violence prevention program. If such a program exists, the CSHO shall ask the person responsible for the program to describe all the potential workplace hazards. If there is no workplace violence prevention plan, the CSHO will determine potential workplace violence hazards from sources such as the OSHA 300 log of injuries and illnesses and other relevant records.

NOTE: If training is provided to staff members on workplace violence, the CSHO should conduct the inspection with a staff member who has received the training. If the CSHO does not deem that the existing protections are sufficient, the CSHO should not enter the facility or area within the facility that he or she considers dangerous.

d. CSHOs must notify their supervisor if they experience or witness any incident of workplace violence.

D. Advance Notice of an Inspection.

1. Policy.

Section 17(f) of the Act and §1903.6 contain a general prohibition against the giving of advance notice of inspections, except as authorized by the Secretary or the Secretary's designee. The Act regulates many conditions that are subject to speedy alteration and disguise by employers. To forestall such changes in worksite conditions, the Act prohibits unauthorized advance notice.

a. Advance Notice Exceptions.

There may be occasions when advance notice is necessary to conduct an effective investigation. These occasions are narrow exceptions to the statutory prohibition against advance notice. Advance notice of inspections may be given only with the authorization of the Area Director or designee and only in the following situations:

> ➤ In cases of apparent imminent danger to enable the employer to correct the danger as quickly as possible;
> ➤ When the inspection can most effectively be conducted after regular business hours or when special preparations are necessary;
> ➤ To ensure the presence of employer and employee representatives or other appropriate personnel who are needed to aid in the inspection; and
> ➤ When giving advance notice would enhance the probability of an effective and thorough inspection; e.g., in complex fatality investigations.

NOTE: The regulation at 29 CFR 1903.6(b) says that except in imminent danger situations and in other unusual circumstances, the

advance notice authorized here "shall not be given more than 24 hours before the inspection is scheduled to be conducted."

    b. Delays.

Advance notice exists whenever the Area Office sets up a specific date or time with the employer for the CSHO to begin an inspection. Any delays in the conduct of the inspection shall be kept to an absolute minimum. Lengthy or unreasonable delays shall be brought to the attention of the Area Director or designee. Advance notice generally does not include non-specific indications of potential future inspections.

    In unusual circumstances, the Area Director or designee may decide that a delay is necessary. In those cases the employer or the CSHO shall notify affected employee representatives, if any, of the delay and shall keep them informed of the status of the inspection.

  2. Documentation.

The conditions requiring advance notice and the procedures followed shall be documented in the case file.

E. Pre-Inspection Compulsory Process.

Section 1903.4(b) authorizes the agency to seek a warrant in advance of an attempted inspection if circumstances are such that "pre-inspection process (is) desirable or necessary." Section 8(b) of the Act authorizes the agency to issue administrative subpoenas to obtain evidence related to an OSHA inspection or investigation. See Chapter 15, Legal Issues.

F. Personal Security Clearance.

Some establishments have areas that contain material or processes that are classified by the U.S. Government in the interest of national security. Whenever an inspection is scheduled for an establishment containing classified areas, the Area Director or designee shall assign a CSHO who has the appropriate security clearances. The Regional Administrator shall ensure that an adequate number of CSHOs with appropriate security clearances are available within the Region and that the security clearances are current.

G. Expert Assistance.

  1. The Area Director or designee shall arrange for a specialist and/or specialized training, preferably from within OSHA, to assist in an inspection or investigation when the need for such expertise is identified.

  2. OSHA specialists may accompany CSHOs or perform their tasks separately. CSHOs must accompany outside consultants. OSHA specialists and outside consultants shall be briefed on the purpose of the inspection and personal protective equipment to be utilized.

III. Inspection Scope.

Inspections, either programmed or unprogrammed, fall into one of two categories depending on the scope of the inspection:

A. Comprehensive.

A comprehensive inspection is a substantially complete and thorough inspection of all potentially hazardous areas of the establishment. An inspection may be deemed comprehensive even though, as a result of professional judgment, not all potentially hazardous conditions or practices within those areas are inspected.

3-4

B. Partial.

A partial inspection is one whose focus is limited to certain potentially hazardous areas, operations, conditions or practices at the establishment.

1. A partial inspection may be expanded based on information gathered by the CSHO during the inspection process consistent with the Act and Area Office priorities.

2. CSHOs shall use established written guidelines and criteria, such as Agency directives and LEPs, in conjunction with information gathered during the records or program review and walkaround inspection, to determine whether expanding the scope of an inspection is warranted.

IV. Conduct of Inspection.

A. Time of Inspection.

1. Inspections shall be made during regular working hours of the establishment except when special circumstances indicate otherwise.

2. The Area Director or designee and the CSHO shall determine if alternate work schedules are necessary regarding entry into an inspection site during other-than-normal working hours.

B. Presenting Credentials.

1. While conducting inspections, CSHOs are to present their credentials whenever making contact with management representatives, employees (to conduct interviews), or organized labor representatives.

2. At the beginning of the inspection, the CSHO shall locate the owner representative, operator or agent in charge at the workplace and present credentials. On construction sites this will most often be the representative of the general contractor.

3. The inspection shall not be delayed unreasonably to await the arrival of the employer representative. If the employer representative is coming from off-site, the inspection should not be delayed in excess of one hour. If the workforce begins to depart from the worksite, the CSHO should contact the Area Director or designee for guidance. If the person in charge at the workplace cannot be determined, record the extent of the inquiry in the case file and proceed with the physical inspection.

C. Refusal to Permit Inspection and Interference.

Section 8 of the Act provides that CSHOs may enter without delay and at reasonable times any establishment covered under the Act for the purpose of conducting an inspection. Unless the circumstances constitute a recognized exception to the warrant requirement (e.g., consent, third party consent, plain view, open field, open construction site or exigent circumstances) an employer has a right to require that the CSHO seek an inspection warrant prior to entering an establishment and may refuse entry without such a warrant.

NOTE: On a military base or other Federal Government facility, the following guidelines do not apply. Instead, a representative of the controlling authority shall be informed of the contractor's refusal and asked to take appropriate action to obtain cooperation.

1. Refusal of Entry or Inspection.

a. When the employer refuses to permit entry upon being presented proper credentials, or allows entry but then refuses to permit or hinders the inspection in some way, an attempt shall be made to obtain as much information as possible

3-5

about the establishment.  See Chapter 15, Legal Issues, for additional information.

b. If the employer refuses to allow an inspection of the establishment to proceed, the CSHO shall leave the premises and immediately report the refusal to the Area Director or designee.  The Area Director shall notify the RSOL.

c. If the employer raises no objection to inspection of certain portions of the workplace but objects to inspection of other portions, this shall be documented. Normally, the CSHO shall continue the inspection, confining it only to those certain portions to which the employer has raised no objections.

d. In either case, the CSHO shall advise the employer that the refusal will be reported to the Area Director or designee and that the agency may take further action, which may include obtaining legal process.

e. On multi-employer worksites, valid consent can be granted by the owner, or another employer with employees at the worksite, for site entry.

2. Employer Interference.

Where entry has been allowed but the employer interferes with or limits any important aspect of the inspection, the CSHO shall determine whether or not to consider this action as a refusal.  See §1903.7(b).

Examples of interference are employer refusals to permit:

- the walkaround;
- the examination of records essential to the inspection;
- the taking of essential photographs and/or videotapes;
- the inspection of a particular part of the premises;
- private employee interviews; or
- the attachment of sampling devices.

3. Forcible Interference with Conduct of Inspection or Other Office Duties.

Whenever an OSHA official or employee encounters forcible resistance, opposition, interference, etc., or is assaulted or threatened with assault while engaged in the performance of official duties, all investigative activity shall cease.

a. If a CSHO is assaulted while attempting to conduct an inspection, the CSHO shall contact the proper authorities such as the Federal Protective Services or local police and immediately notify the Area Director.

b. Upon receiving a report of such forcible interference, the Area Director or designee shall immediately notify the Regional Administrator.

c. If working at an off-site location, CSHOs should leave the site immediately pending further instructions from the Area Director or designee.

4. Obtaining Compulsory Process.

If it is determined, upon refusal of entry or refusal to produce evidence required by subpoena, that a warrant will be sought, the Area Director shall proceed according to guidelines and procedures established in the Region for warrant applications.  See Chapter 15, Legal Issues.

D. Employee Participation.

CSHOs shall advise employers that Section 8(e) of the Act and §1903.8 require that an employee representative be given an opportunity to participate in the inspection.

1. CSHOs shall determine as soon as possible after arrival whether the workers at the inspected worksite are represented and, if so, shall ensure that employee representatives are afforded the opportunity to participate in all phases of the inspection.
2. If an employer resists or interferes with participation by employee representatives in an inspection and the interference cannot be resolved by the CSHO, the resistance shall be construed as a refusal to permit the inspection and the Area Director or designee shall be contacted.

E. Release for Entry.
1. CSHOs shall not sign any form or release or agree to any waiver. This includes any employer forms concerned with trade secret information.
2. CSHOs may obtain a pass or sign a visitor's register, or any other book or form used by the establishment to control the entry and movement of persons upon its premises. Such signature shall not constitute any form of a release or waiver of prosecution for liability under the Act.

F. Bankrupt or Out of Business.
1. If the establishment scheduled for inspection is found to have ceased business and there is no known successor, the CSHO shall report the facts to the Area Director or designee.
2. If an employer, although bankrupt, is continuing to operate on the date of the scheduled inspection, then the inspection shall proceed.
3. An employer must comply with the Act until such time as the business actually ceases to operate.

G. Employee Responsibilities.
1. Section 5(b) of the Act states: "Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to the Act which are applicable to his own actions and conduct." The Act does not provide for the issuance of citations or the proposal of penalties against employees. Employers are responsible for employee compliance with the standards.
2. In cases where CSHOs determine that employees are systematically refusing to comply with a standard applicable to their own action and conduct, the matter shall be referred to the Area Director who shall consult with the Regional Administrator.
3. Under no circumstances are CSHOs to become involved in an on-site dispute involving labor management issues or interpretation of collective bargaining agreements. CSHOs are expected to obtain sufficient information to assess whether the employer is using its authority to ensure employee compliance with the Act. Concerted refusals to comply by employees will not bar the issuance of a citation if the employer has failed to exercise its control to the maximum extent reasonable, including discipline and discharge.

H. Strike or Labor Dispute.
Plants or establishments may be inspected regardless of the existence of labor disputes, such as work stoppages, strikes or picketing. If the CSHO identifies an unanticipated labor dispute at a proposed inspection worksite, the Area Director or designee shall be consulted before any contact is made.
1. Programmed Inspections.

3-7

Programmed inspections may be deferred during a strike or labor dispute, either between a recognized union and the employer or between two unions competing for bargaining rights in the establishment.

2. <u>Unprogrammed Inspections</u>.

    a. Unprogrammed inspections (complaints, fatalities, referrals, etc.) will be performed during strikes or labor disputes. However, the credibility and veracity of any complaint shall be thoroughly assessed by the Area Director or designee prior to scheduling an inspection.

    b. If there is a picket line at the establishment, CSHOs shall attempt to locate and inform the appropriate union official of the reason for the inspection prior to initiating the inspection.

    c. During the inspection, CSHOs will make every effort to ensure that their actions are not interpreted as supporting either party to the labor dispute.

I. <u>Variances</u>.

The employer's requirement to comply with a standard may be modified through granting of a variance, as outlined in <u>Section 6</u> of the Act.

1. An employer will not be subject to citation if the observed condition is in compliance with an existing variance issued to that employer.

2. In the event that an employer is not in compliance with the requirement(s) of the issued variance, a violation of the applicable standard shall be cited with a reference in the citation to the variance provision that has not been met.

V. <u>Opening Conference</u>.

  A. <u>General</u>.

CSHOs shall attempt to inform all affected employers of the purpose of the inspection, provide a copy of the complaint if applicable, and include any employee representatives, unless the employer objects. The opening conference should be brief so that the compliance officer may quickly proceed to the walkaround. Conditions of the worksite shall be noted upon arrival, as well as any changes that may occur during the opening conference. At the start of the opening conference, CSHOs will inform both the employer and the employee representative(s) of their rights during the inspection, including the opportunity to participate in the physical inspection of the workplace. Publications <u>OSHA 3000</u>, *Employer Rights & Responsibilities Following a Federal OSHA Inspection* and <u>OSHA 3021</u>, *Workers Rights* should be distributed.

    CSHOs shall request a copy of the written certification that a hazard assessment has been performed by the employer in accordance with <u>§1910.132(d)</u>. CSHOs should then ask the person who signed the certification about any potential worksite exposures and select appropriate personal protective equipment.

1. <u>Attendance at Opening Conference</u>.

    a. CSHOs shall conduct a joint opening conference with employer and employee representatives unless either party objects.

    b. If there is objection to a joint conference, the CSHO shall conduct separate conferences with employer and employee representatives.

2. <u>Scope of Inspection</u>.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 85 of 102   Document 1

CSHOs shall outline in general terms the scope of the inspection, including the need for private employee interviews, physical inspection of the workplace and records, possible referrals, rights during an inspection, discrimination complaints, and the closing conference(s).

3. <u>Video/Audio Recording</u>.

CSHOs shall inform participants that a video camera and/or an audio recorder may be used to provide a visual and/or audio record, and that the videotape and audiotape may be used in the same manner as handwritten notes and photographs in OSHA inspections.

NOTE: If an employer clearly refuses to allow videotaping during an inspection, CSHOs shall contact the Area Director to determine if videotaping is critical to documenting the case. If it is, this may be treated as a denial of entry.

4. <u>Immediate Abatement</u>.

CSHOs should explain to employers the advantages of immediate abatement, including that there are no certification requirements for violations quickly corrected during the inspection. See <u>Chapter 7</u>, Post-Citation Procedures and Abatement Verification.

5. <u>Quick-Fix Penalty Reduction</u>.

CSHOs shall advise both the employer and employee representatives, if applicable, that the Quick-Fix penalty reduction may be applied to each qualified violation (i.e., those which meet the criteria noted in <u>Chapter 6</u>), which the employer immediately abates during the inspection and is visually verified by the CSHO. CSHOs shall explain the Quick-Fix criteria and answer any questions concerning the program. See <u>Chapter 6</u>, Penalties and Debt Collection.

6. <u>Recordkeeping Rule</u>.

   a. The recordkeeping regulation at §1904.40(a) states that once a request is made, an employer must provide copies of the required recordkeeping records within four (4) business hours.

   b. Although the employer has four business hours to provide injury and illness records, the compliance officer is not required to wait until the records are provided before beginning the walkaround portion of the inspection. As soon as the opening conference is completed, the compliance officer is to begin the walkaround portion of the inspection.

   NOTE: 29 CFR Part 1904 has new requirements for reporting work-related fatalities, hospitalizations, amputations or losses of an eye. The new rule, which also updates the list of employers partially exempt from OSHA record-keeping requirements, went into effect on January 1, 2015, for workplaces under federal OSHA jurisdiction. (See <u>79 FR 56129</u>, Occupational Injury and Illness Recording and Reporting Requirements – NAICS Update and Reporting Revisions, September 18, 2014.)

7. <u>Abbreviated Opening Conference</u>.

An abbreviated opening conference shall be conducted whenever the CSHO believes that circumstances at the worksite dictate that the walkaround begin as promptly as possible.

   a. In such cases, the opening conference shall be limited to:

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 86 of 102   Document 1

> ➢ presenting credentials;
> ➢ stating the purpose of the visit;
> ➢ explaning employer and employee rights; and
> ➢ requesting employer and employee representatives.
> All other elements shall be fully addressed during the closing conference(s).

    b. Pursuant to §1903.8, the employer and the employee representatives shall be informed of the opportunity to participate in the physical inspection of the workplace.

B. <u>Review of Appropriation Act Exemptions and Limitations</u>.

CSHOs shall determine if the employer is covered by any exemptions or limitations noted in the current Appropriations Act. See CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998.

C. <u>Review Screening for Process Safety Management (PSM) Coverage</u>.

CSHOs shall request a list of the chemicals on-site and their respective maximum intended inventories. CSHOs shall review the list of chemicals and quantities, and determine if there are highly hazardous chemicals (HHCs) listed in §1910.119, Appendix A or flammable liquids or gases at or above the specified threshold quantity. CSHOs may ask questions, conduct interviews, and/or conduct a walkaround to confirm the information on the list of chemicals and maximum intended inventories.

1. If there is an HHC present at or above threshold quantities, CSHOs shall use the following criteria to determine if any exemptions apply:

    a. CSHOs shall confirm that the facility is not: a retail facility; oil or gas well drilling or servicing operation; or a normally unoccupied remote facility (§1910.119(a)(2)). If the facility is one of these types of establishments, PSM does not apply.

    b. If management believes that the process is exempt, CSHOs shall ask the employer to provide documentation or other information to support that claim.

2. According to §1910.119 (a)(1)(ii), a process may be exempt if the employer can demonstrate that the covered chemical(s) are:

    a. Hydrocarbon fuels used solely for workplace consumption as a fuel (e.g., propane used for comfort heating, gasoline for vehicle refueling), if such fuels are not a part of a process containing another highly hazardous chemical covered by the standard, or

    b. Flammable liquids with a flashpoint below 100 °F (37.8°C) stored in atmospheric tanks or transferred, which are kept below their normal boiling point without the benefit of chilling or refrigeration.

    NOTE: Current agency policies for applying exemptions can be found on the OSHA website. See CPL 03-00-010, *Petroleum Refinery Process Safety Management National Emphasis Program*, August 18, 2009.

D. <u>Review of Voluntary Compliance Programs</u>.

Employers who participate in selected voluntary compliance programs may be exempted from programmed inspections. CSHOs shall determine whether the employer falls under such an exemption during the opening conference.

1. <u>OSHA On-Site Consultation Visits</u>.

3-10

a. In accordance with §1908.7 and Chapter VII., of CSP 02-00-002, *The Consultation Policies and Procedures Manual*, CSHOs shall ascertain at the opening conference whether an OSHA-funded consultation visit is in progress. A consultation Visit in Progress extends, from the beginning of the opening conference to the end of the correction due dates (including extensions).

b. An on-site consultation Visit in Progress has priority over programmed inspections except for imminent danger investigations, fatality/catastrophe investigations, complaint investigations, and other critical inspections as determined by the Assistant Secretary. See §1908.7(b)(2).

2. Safety and Health Achievement Recognition Program (SHARP).

a. Upon verifying that the employer is a current participant, the CSHO shall notify the Area Director or designee so that the company can be removed from the OSHA General Programmed Inspection Schedule for the approved exemption period, which begins on the date the Regional Office approves the employer's participation in SHARP.

b. The initial exemption period is up to two years. The renewal exemption period is up to three years, based on the recommendation of the Consultation Project Manager.

3. Voluntary Protection Programs (VPP).

Inspections at a VPP site may be conducted in response to referrals, formal complaints, fatalities, and catastrophes.

NOTE: A Compliance Officer who was previously a VPP on-site team member will generally not conduct an enforcement inspection at that VPP site for the following 2 years or until the site is no longer a VPP participant, whichever occurs first. See CSP 03-01-003, *Voluntary Protection Programs (VPP): Policies and Procedures Manual*, April 18, 2008. On a case-by-case basis, the Regional Solicitor may override this provision.

E. Disruptive Conduct.

CSHOs may deny the right of accompaniment to any person whose conduct interferes with a fair and orderly inspection. See §1903.8(d). If disruption or interference occurs, the CSHO shall contact the Area Director or designee as to whether to suspend the walkaround inspection or take other action. The employee representative shall be advised that, during the inspection, matters unrelated to the inspection shall not be discussed with employees.

F. Classified Areas.

In areas containing information classified by an agency of the U.S. Government in the interest of national security, only persons authorized to have access to such information may accompany a CSHO on the inspection. See §1903.8(d).

VI. Review of Records.
   A. Injury and Illness Records.
      1. Collection of Data.
         a. At the start of each inspection, the CSHO shall review the employer's injury and illness records for five prior calendar years, record the information on a copy of the *OSHA-300* screen, and enter the employer's data using the OIS Application

3-11

on the NCR (micro). This shall be done for all general industry, construction, maritime, and agriculture inspections and investigations.

    b. CSHOs shall use these data to calculate the Days Away, Restricted, or Transferred (DART) rate and to observe trends, potential hazards, types of operations and work-related injuries.

    c. If recordkeeping deficiencies or unsound employer safety incentive policies are discovered, the CSHO and the Area Director (or designee) may request assistance from the Regional Recordkeeping Coordinator. See Richard E. Fairfax Memo, *Employer Safety Incentive and Disincentive Policies and Practices* (March 12, 2013) at: http://www.osha.gov/as/opa/whistleblowermemo.html.

2. <u>Information to be Obtained</u>.

    a. CSHOs shall request copies of the *OSHA-300 Logs*, the total hours worked and the average number of employees for each year, and a roster of current employees.

    b. If CSHOs have questions regarding a specific case on the log, they shall request the *OSHA-301s* or equivalent form for that case.

    c. CSHOs shall check if the establishment has an on-site medical facility and/or the location of the nearest emergency room where employees may be treated.

    NOTE: The total hours worked and the average number of employees for each year can be found on the *OSHA-300A* for all past years.

3. <u>Automatic DART Rate Calculation</u>.

CSHOs will not normally need to calculate the Days Away, Restricted, or Transferred (DART) rate since it is automatically calculated when the *OSHA-300* data are entered into the OIS. If one of the three years is a partial year, so indicate and the software will calculate accordingly.

4. <u>Manual DART Rate Calculation</u>.

If it is necessary to calculate rates manually, the CSHO will need to calculate the DART Rates individually for each calendar year using the following procedures. The DART rate includes cases involving days away from work, restricted work activity, and transfers to another job.

    The formula is:

    *(N/EH) x (200,000)* where:

      ➢ *N* is the number of cases involving days away and/or restricted work activity and job transfers.

      ➢ *EH* is the total number of hours worked by all employees during the calendar year; and

      ➢ *200,000* is the base number of hours worked for 100 full-time equivalent employees.

        **EXAMPLE 3-1**: Employees of an establishment (XYZ Company), including management, temporary and leased workers, worked 645,089 hours at XYZ company. There were 22 injury and illness cases involving days away and/or restricted work activity and/or job transfer from the *OSHA-300 Log* (total of column H plus column I). The DART rate would be $(22 \div 645,089) \times (200,000) = 6.8$.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 89 of 102   Document 1

5. <u>Construction</u>.

   For construction inspections/investigations, only the *OSHA-300* information for the prime/general contractor needs to be recorded (where such records exist and are maintained). It will be left to the discretion of the Area Director or the CSHO as to whether *OSHA-300* data should also be recorded for any of the subcontractors.

6. <u>Federal Agencies</u>.

   Federal agency injury and illness recording and reporting requirements shall comply with the requirements under §1904, subparts C, D, E, and G, except that the definition of "establishment" found in §1960.2(h) will remain applicable to federal agencies.

B. <u>Recording Criteria</u>.

   Employers must record new work-related injuries and illnesses that meet one or more of the general recording criteria or meet the recording criteria for specific types of conditions.

   1. Death;

   2. Days Away from Work;

   3. Restricted Work;

   4. Transfer to another job;

   5. Medical treatment beyond first aid;

   6. Loss of consciousness;

   7. Diagnosis of a significant injury or illness; or

   8. Meet the recording criteria for Specific Cases noted in §1904.8 through §1904.11.

C. <u>Recordkeeping Deficiencies</u>.

   1. If recordkeeping deficiencies are suspected, the CSHO and the Area Director or designee may request assistance from the Regional Recordkeeping Coordinator. If there is evidence that the deficiencies or inaccuracies in the employer's records impair the ability to assess hazards, injuries and/or illnesses at the workplace, a comprehensive records review shall be performed.

   2. Other information related to this topic:

      a. See CPL 02-00-135, *Recordkeeping Policies and Procedures Manual*, December 30, 2004, and CPL 02-02-072, *Rules of Agency Practice and Procedure concerning OSHA Access to Employee Medical Records*, August 22, 2007.

      b. Other OSHA programs and records will be reviewed, including hazard communication, lockout/tagout, emergency evacuation and personal protective equipment. Additional programs will be reviewed as necessary.

      c. Many standard-specific directives provide additional instruction to CSHOs requesting certain records and/or documents at the opening conference.

      d. There are several types of workplace policies and practices that could discourage employee reports of injuries and could constitute a violation of section 11(c) of the OSH Act. These policies and practices, otherwise known as employer safety incentive and disincentive policies and practices, may also violate OSHA's recordkeeping regulations. OSHA enumerated the most common potentially discriminatory policies in the (March 12, 2012) Memorandum from OSHA

3-13

Deputy Asst. Sec. Richard E. Fairfax: Employer Safety Incentive and Disincentive Policies and Practices.

VII. <u>Walkaround Inspection.</u>

The main purpose of the walkaround inspection is to identify potential safety and/or health hazards in the workplace. CSHOs shall conduct the inspection in such a manner as to avoid unnecessary personal exposure to hazards and to minimize unavoidable personal exposure to the extent possible.

A. <u>Walkaround Representatives.</u>

Persons designated to accompany CSHOs during the walkaround are considered walkaround representatives, and will generally include those designated by the employer and employees. At establishments where more than one employer is present or in situations where groups of employees have different representatives, it is acceptable to have a different employer/employee representative for different phases of the inspection. More than one employer and/or employee representative may accompany the CSHO throughout or during any phase of an inspection if the CSHO determines that such additional representatives will aid, and not interfere with, the inspection. See §1903.8(a).

The importance of worker participation to an effective workplace safety and health inspection was clearly established in 1903.8(e) of the OSH Act which provides that "[s]ubject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace…for the purpose of aiding such inspection."

However, 1903.8(c) states that "Compliance Safety and Health Officers are authorized to deny the right of accompaniment under this section to any person whose conduct interferes with a fair and orderly inspection," which includes any activity not directly related to conducting an effective and thorough physical inspection of the workplace.

1. <u>Employees Represented by a Certified or Recognized Bargaining Agent.</u>

During the opening conference, the highest ranking union official or union employee representative on-site shall designate who will participate in the walkaround. OSHA regulation §1903.8(b) gives the CSHO the authority to resolve all disputes as to whom is the representative authorized by the employer and employees. <u>Section 1903.8(c)</u> states that the representative authorized by the employees shall be an employee of the employer. If in the judgement of the CSHO, good cause has been shown why accompaniment by a third party, who is not an employee of the employer (such as an industrial hygienist or a safety engineer), and is reasonably necessary to conduct an effective and thorough physical inspection of the workplace; such third party may accompany CSHOs during the inspection. It is OSHA's view that representatives are "reasonably necessary", when they make a positive contribution to a thorough and effective inspection.

2. <u>No Certified or Recognized Bargaining Agent.</u>

Where employees are not represented by an authorized representative, there is no established safety committee, or employees have not chosen or agreed to an employee representative for OSHA inspection purposes (regardless of the existence of a safety committee), CSHOs shall determine if other employees would suitably represent the interests of employees on the walkaround.

3-14

If selection of such an employee is impractical, CSHOs shall conduct interviews with a reasonable number of employees during the walkaround.

In some cases, workers without a certified or recognized bargaining agent may authorize third party organizations and/or individuals to be their representatives during an inspection. As with non-employee representatives authorized by workers with a recognized bargaining agent, allowing this category of third party representative to accompany OSHA compliance officers on an inspection is appropriate if the representative will help achieve an effective and thorough health and safety inspection. The purpose of a walkaround representative is to assist the inspection by helping the compliance officer receive valuable health and safety information from workers who may not be able or willing to provide such information absent the third party participants.

3. Safety Committee or Employees at Large.

Employee members of an established workplace safety committee **or** employees at large may designate an employee representative for OSHA inspection purposes.

B. Evaluation of Safety and Health Management System.

The employer's safety and health management system shall be evaluated to determine its good faith for the purposes of penalty calculation. See Chapter 6, Penalties and Debt Collection.

C. Record All Facts Pertinent to a Violation.

1. Safety and health violations shall be brought to the attention of employer and employee representatives at the time they are documented.

2. CSHOs shall record, at a minimum, the identity of the exposed employee, the hazard to which the employee was exposed, the employee's proximity to the hazard, the employer's knowledge of the condition, the manner in which important measurements were obtained, and how long the condition has existed.

3. CSHOs will document interview statements in a thorough and accurate manner; including names, dates, times, locations, types of materials, positions of pertinent articles, witnesses, etc.

NOTE: If employee exposure to hazards is not observed, the CSHO shall document facts on which the determination can be made whether an employee has been or could be exposed. See Chapter 4, Violations and Chapter 5, Case File Preparation and Documentation.

D. Testifying in Hearings.

CSHOs may be required to testify in hearings on OSHA's behalf, and shall be mindful of this fact when recording observations during inspections. The case file shall reflect conditions observed in the workplace as accurately and detailed as possible.

E. Trade Secrets.

A trade secret, as referenced in Section 15 of the Act, includes information concerning or related to processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association. See 18 USC 1905.

1. Policy.

CSHOs and OSHA personnel shall preserve the confidentiality of trade secrets.

2. Restriction and Controls.

3-15

At the commencement of an inspection, the employer may identify areas in the establishment which contain or which might reveal a trade secret. If the CSHO has no clear reason to question such identification, information obtained in such areas, including all negatives, photographs, videotapes, environmental samples and OSHA documentation forms, shall be labeled:

"Confidential – Trade Secret"

    a. Under <u>Section 15</u> of the Act, all information reported to or obtained by CSHOs in connection with any inspection or other activity that contains or that might reveal a trade secret shall be kept confidential. Such information shall not be disclosed except to other OSHA officials concerned with the enforcement of the Act or, when relevant, in any proceeding under the Act.

    b. <u>Title 18 USC 1905</u> provides criminal penalties for Federal employees who disclose such information. These penalties include fines of up to $1,000 or imprisonment for up to one year, or both, and removal from office or employment.

    c. Trade secret materials shall not be labeled as "Top Secret," "Secret," or "Confidential," nor shall these security classification designations be used in conjunction with other words unless the trade secrets are also classified by an agency of the U.S. Government in the interest of national security.

    3. If the employer objects to the taking of photographs and/or videotapes because trade secrets would or may be disclosed, CSHOs should advise the employer of the protection against such disclosure afforded by <u>Section 15</u> of the Act and <u>§1903.9</u>. If the employer still objects, CSHOs shall contact the Area Director or designee.

F. <u>Collecting Samples</u>.

    1. CSHOs shall determine, early in the inspection, whether sampling (such as, but not limited to, air sampling and surface sampling) is required by using the information collected during the walk-around and from the pre-inspection review.

    2. Summaries of sampling results shall be provided on request to the appropriate employees (including those exposed or likely to be exposed to a hazard), to employer representatives and to employee representatives.

G. <u>Photographs and Videotapes</u>.

    1. Photographs and/or videotapes, shall be taken whenever CSHOs determine there is a need.

        a. Photographs that support violations shall be properly labeled, and may be attached to the appropriate *Violation (OSHA-1B)*.

        b. CSHOs shall ensure that any photographs relating to confidential trade secret information are identified as such and are kept separate from other evidence.

    2. All film and photographs or videotape shall be retained in the case file. If lack of storage space does not permit retaining the film, photographs or videotapes with the file, they may be stored elsewhere with a reference to the corresponding inspection. Videotapes shall be properly labeled. For more information regarding guidelines for case file documentation with video, audio and digital media, see OSHA Instruction <u>CPL 02-00-098</u>, *Guidelines for Case File Documentation for Use with Videotapes and Audiotapes*, October 12, 1993, [and any other directives related to photograph and videotape retention.]

H. <u>Violations of Other Laws</u>.

If a CSHO observes apparent violations of laws enforced by other government agencies, such cases shall be referred to the appropriate agency. Referrals shall be made using appropriate Regional procedures.

I. Interviews of Non-Managerial Employees.

A free and open exchange of information between CSHOs and employees is essential to an effective inspection. Interviews provide an opportunity for employees to supply valuable factual information concerning hazardous conditions, including information on how long workplace conditions have existed, the number and extent of employee exposure(s) to a hazardous condition, and the actions of management regarding correction of a hazardous condition.

1. Background.

    a. Section 8(a)(2) of the Act authorizes CSHOs to question **any employee privately** during regular working hours or at other reasonable times during the course of an OSHA inspection. The purpose of such interviews is to obtain whatever information CSHOs deem necessary or useful in carrying out inspections effectively. The mandate to interview employees in private is OSHA's right.

    b. Employee interviews are an effective means to determine if an advance notice of inspection has adversely affected the inspection conditions, as well as to obtain information regarding the employer's knowledge of the workplace conditions or work practices in effect prior to, and at the time of, the inspection. During interviews with employees, CSHOs should ask about these matters.

    c. CSHOs should also obtain information concerning the presence and/or implementation of a safety and health system to prevent or control workplace hazards.

    d. If an employee refuses to be interviewed, the CSHO shall use professional judgment, in consultation with the Area Director or designee, in determining the need for the employee's statement.

2. Employee Right of Complaint.

CSHOs may consult with any employee who desires to discuss a potential violation. Upon receipt of such information, CSHOs shall investigate the alleged hazard, where possible, and record the findings.

3. Time and Location of Interviews.

CSHOs are authorized to conduct interviews during regular working hours and at other reasonable times, and in a reasonable manner at the workplace. Interviews often occur during the walkaround, but may be conducted at any time during an inspection. If necessary, interviews may be conducted at locations other than the workplace. CSHOs should consult with the Area Director if an interview is to be conducted someplace other than the workplace. Where appropriate, OSHA has the authority to subpoena an employee to appear at the Area Office for an interview.

4. Conducting Interviews of Non-Managerial Employees in Private.

CSHOs shall inform employers that interviews of non-managerial employees will be conducted in private. CSHOs are entitled to question such employees in private regardless of employer preference. If an employer interferes with a CSHOs ability to do so, the CSHO should request that the AD consult with the RSOL to determine appropriate legal action. Interference with a CSHOs ability to conduct private

interviews with non-managerial employees includes, but is not limited to, attempts by management officials or representatives to be present during interviews.

5. <u>Conducting Employee Interviews</u>.

   a. <u>General Protocols</u>.

      ➤ At the beginning of the interview CSHOs should identify themselves to the employee by showing their credentials, and provide the employee with a business card. This allows employees to contact CSHOs if they have further information at a later time.

      ➤ CSHOs should explain to employees that the reason for the interview is to gather factual information relevant to a safety and health inspection. It is not appropriate to assume that employees already know or understand the agency's purpose. Particular sensitivity is required when interviewing a non-English speaking employee. In such instances, CSHOs should initially determine whether the employee's comprehension of English is sufficient to permit conducting an effective interview. If an interpreter is needed, CSHOs should contact the General Services Administration (GSA) tele-interpreter or use the Area Office's protocol for interpreters.

      ➤ Every employee should be asked to provide his or her name, home address and phone number. CSHOs should request identification and make clear the reason for asking for this information.

      ➤ CSHOs shall inform employees that OSHA has the right to interview them in private and of the protections afforded under <u>Section 11(c)</u> of the Act.

      ➤ In the event an employee requests that a representative of the union be present, CSHOs shall make a reasonable effort to honor the request.

      ➤ If an employee requests that his/her personal attorney be present during the interview, CSHOs should honor the request and, before continuing with the interview, consult with the Area Director for guidance.

      ➤ Rarely, an attorney for the employer may claim that individual employees have also authorized the attorney to represent them. Such a situation creates a potential conflict of interest. CSHOs should ask the affected employees whether they have agreed to be represented by the attorney. If the employees indicate that they have, CSHOs should consult with the Area Director, who will contact the RSOL.

   b. <u>Interview Statements</u>.

   Interview statements of employees or other persons shall be obtained whenever CSHOs determine that such statements would be useful in documenting potential violations. Interviews shall normally be reduced to writing and written in the first person in the language of the individual. Employees shall be encouraged to sign and date their statement.

      ➤ Any changes or corrections to the statement shall be initialed by the individual. Statements shall not otherwise be changed or altered in any manner.

      ➤ Statements shall include the words, "I request that my statement be held confidential to the extent allowed by law" and end with the following; "I have read the above, and it is true to the best of my knowledge."

3-18

> If the person making the declaration refuses to sign, the CSHO shall note the refusal on the statement. The statement shall, nevertheless, be read back to the person in an attempt to obtain agreement and then noted in the case file.

> A transcription of any recorded statement shall be made when necessary to the case.

> Upon request, if a management employee requests a copy of his/her interview statement, one shall be given to them.

c. The Informant Privilege.

> The informant privilege allows the government to withhold the **identity** of individuals who provide information about the violation of laws, including OSHA rules and regulations. CSHOs shall inform employees that their statements will remain confidential to the extent permitted by law. However, each employee giving a statement should be informed that disclosure of his or her identity may be necessary in connection with enforcement or court actions.

NOTE: Whenever CSHOs make an assurance of confidentiality as part of an investigation (i.e., informs the person giving the statement that their identity will be protected), the pledge shall be reduced to writing and included in the case file.

> The privilege also protects the contents of statements to the extent that disclosure may reveal the witness identity. Where the contents of a statement will not disclose the identity of the informant (i.e., do not reveal the witness' job title, work area, job duties, or other information that would tend to reveal the individual's identity), the privilege does not apply. Interviewed employees shall be told that they are under no legal obligation to inform anyone, including employers, that they provided information to OSHA. Interviewed employees shall also be informed that if they voluntarily disclose such information to others, it may impair the agency's ability to invoke the privilege.

J. Multi-Employer Worksites.

On multi-employer worksites (in all industry sectors), more than one employer may be cited for a hazardous condition that violates an OSHA standard. A two-step process must be followed to determine whether more than one employer is to be cited. See CPL 02-00-124, *Multi-Employer Citation Policy*, December 10, 1999, for further guidance.

K. Administrative Subpoena.

Whenever there is a reasonable need for records, documents, testimony and/or other supporting evidence necessary for completing an inspection scheduled in accordance with any current and approved inspection scheduling system or an investigation of any matter properly falling within the statutory authority of the agency, the Regional Administrator, or authorized Area Director or designee, may issue an administrative subpoena. See Chapter 15, Legal Issues.

L. Employer Abatement Assistance.

1. Policy.

CSHOs shall offer appropriate abatement assistance during the walkaround to explain how workplace hazards might be eliminated. The information shall provide the

employee with guidance to develop acceptable abatement methods or to seek appropriate professional assistance. CSHOs shall not imply OSHA endorsement of any product through use of specific product names when recommending abatement measures. The issuance of citations shall not be delayed.

2. Disclaimers.

The employer shall be informed that:

a. The employer is not limited to the abatement methods suggested by OSHA;

b. The methods explained are general and may not be effective in all cases; and

c. The employer is responsible for selecting and carrying out an effective abatement method, and maintaining the appropriate documentation.

VIII. Closing Conference.

A. Participants.

At the conclusion of an inspection, CSHOs shall conduct a closing conference with the employer and the employee representatives, jointly or separately, as circumstances dictate. The closing conference may be conducted on-site or by telephone as CSHOs deem appropriate. If the employer refuses to allow a closing conference, the circumstances of the refusal shall be documented in the *Narrative (OSHA-1A)* and the case shall be processed as if a closing conference had been held.

NOTE: When conducting separate closing conferences for employers and labor representatives (where the employer has declined to have a joint closing conference with employee representatives), CSHOs shall normally hold the conference with employee representatives first, unless the employee representative requests otherwise. This procedure will ensure that worker input is received before employers are informed of violations and proposed citations.

B. Discussion Items.

1. CSHOs shall discuss the apparent violations and other pertinent issues found during the inspection and note relevant comments on the *Violation (OSHA-1B)*, including input for establishing correction dates.

2. CSHOs shall give employers the publication, "Employer Rights and Responsibilities Following a Federal OSHA Inspection," (OSHA-3000) which explains the responsibilities and courses of action available to the employer if a citation is issued, including their rights under the Small Business Regulatory Enforcement Fairness Act (SBREFA). (See SBREFA on OSHA's public webpage.) CSHOs shall then briefly discuss the information in the booklet and answer any questions. All matters discussed during the closing conference shall be documented in the case file, including a note describing printed materials distributed.

3. CSHOs shall discuss the strengths and weaknesses of the employer's occupational safety and health system and any other applicable programs, and advise the employer of the benefits of an effective program and provide information, such as OSHA's website, describing program elements.

4. Both the employer and employee representatives shall be advised of their rights to participate in any subsequent conferences, meeting or discussions, and their contest rights. Any unusual circumstances noted during the closing conference shall be documented in the case file.

5. Since CSHOs may not have all pertinent information at the time of the first closing conference, a second closing conference may be held by telephone or in person.

6. CSHOs shall advise employee representatives that:

   a. Under 29 CFR 2200.20 of the Occupational Safety and Health Review Commission regulations, if an employer contests a citation, the employees have a right to elect "party status" before the Review Commission;

   b. The employer should notify them if a notice of contest or a petition for modification of abatement date is filed;

   c. They have Section 11(c) rights; and

   d. They have a right to contest the abatement date. Such contests must be in writing and must be postmarked within 15 working days after receipt of the citation.

C. Advice to Attendees.

   1. The CSHO shall advise those attending the closing conference that a request for an informal conference with the OSHA Area Director is encouraged, as it provides an opportunity to:

      a. Resolve disputed citations and penalties without the need for litigation, which can be time-consuming and costly;

      b. Obtain a more complete understanding of the specific safety or health standards that apply;

      c. Discuss ways to correct the violations;

      d. Discuss issues concerning proposed penalties;

      e. Discuss proposed abatement dates;

      f. Discuss issues regarding employee safety and health practices; and

      g. Learn more about other OSHA programs and services available.

   2. If a citation is issued, an informal conference or the request for one does not extend the 15-working-day period during which the employer or employee representatives may contest.

   3. Oral disagreement or expression(s) during an informal conference, of intent to contest a citation, penalty or abatement date does not replace the requirement that the employer's Notice of Contest be in writing.

   4. Employee representatives have the right to participate in informal conferences or negotiations between the Area Director and the employer in accordance with the guidelines given in Chapter 7, Section II., Informal Conferences.

D. Penalties.

   CSHOs shall explain that penalties must be paid within 15 working days after the employer receives a *Citation and Notification of Penalty (OSHA-2)*. If, however, an employer contests the citation and/or the penalty, penalties need not be paid for the contested items until the date that the citation/notification of penalty becomes a final order.

E. Feasible Administrative, Work Practice and Engineering Controls.

   Where appropriate, CSHOs will discuss control methodology with the employer during the closing conference.

   1. Definitions.

a. <u>Engineering Controls</u>: Consist of substitution, isolation, ventilation and equipment modification.

b. <u>Administrative Controls</u>: Any procedure that significantly limits daily exposure by manipulation of the work schedule or altering the organization of accomplishing the work is considered an administrative control. The use of personal protective equipment is not considered an administrative control.

c. <u>Work Practice Controls</u>: Methods such as changing work habits, improving sanitation and hygiene practices, or making other changes in the way the employee performs the job, in order to reduce or eliminate employee exposure to the hazard.

d. <u>Feasibility</u>: Abatement measures required to correct a citation item are feasible when they are capable of being done. The CSHO, following current directions and guidelines, shall inform the employer, where appropriate, that a determination will be made about whether engineering or administrative controls are feasible.

e. <u>Technical Feasibility</u>: The existence of technical know-how about materials and methods available or adaptable to specific circumstances, which can be applied to a cited violation with a reasonable possibility that employee exposure to occupational hazards will be reduced.

f. <u>Economic Feasibility</u>: This means that the employer is financially able to undertake the measures necessary to abate the citations received.

   NOTE: If an employer's level of compliance lags significantly behind that of its industry, an employer's claim of economic infeasibility will not be accepted.

2. <u>Documenting Claims of Infeasibility</u>.

a. CSHOs shall document the underlying facts that may support an employer's claim of infeasibility.

b. When economic infeasibility is claimed, the CSHO shall inform the employer that, although the cost of corrective measures to be taken will generally not be considered as a factor in the issuance of a citation, it may be considered during an informal conference or during settlement negotiations.

c. CSHOs should avoid discussing complex issues regarding feasibility. These should be referred to the Area Director or designee for determination.

F. <u>Reducing Employee Exposure</u>.

Employers shall be advised that, whenever feasible, engineering, administrative or work practice controls must be instituted, even if they are not sufficient to eliminate the hazard completely (or to reduce exposure to or below the permissible exposure limit). Such controls are required in conjunction with personal protective equipment to further reduce exposure to the lowest practical level.

G. <u>Abatement Verification</u>.

During the closing conference the Compliance Officer should thoroughly explain to the employer the abatement verification requirements. See <u>Chapter 7</u>, Post Inspection Procedures and Abatement Verification.

1. <u>Abatement Certification</u>.

Abatement certification is required for each citation item(s) that the employer receives, except those identified as "Corrected During Inspection."

2. Corrected During Inspection (CDI).

   Violations that will reflect on-site abatement and will be identified in the citations as "Corrected During Inspection" shall be reviewed at the closing conference.

3. Abatement Documentation.

   Abatement documentation, the employer's physical proof of abatement, is required to be submitted along with each willful, repeat and designated serious violation. To minimize confusion, the distinction between abatement certification and abatement documentation should be discussed.

4. Placement of Abatement Verification Tags.

   The required placement on movable equipment of either abatement verification tags or the citation must also be discussed at the closing conference, if it has not been discussed during the walkaround portion of the inspection. See §1903.19(i).

5. Requirements for Extended Abatement Periods.

   Where extended abatement periods are involved, the requirements for abatement plans and progress reports shall be discussed.

H. Employee Discrimination.

   The CSHO shall emphasize that the Act prohibits employers from discharging or discriminating in any way against an employee who has exercised any right under the Act, including the right to make safety or health complaints or to request an OSHA inspection.


IX. Special Inspection Procedures.

A. Follow-up and Monitoring Inspections.

   The primary purpose of a follow-up inspection is to determine if the previously cited violations have been corrected. Monitoring inspections are conducted to ensure that hazards are being abated and employees protected, whenever a long period of time is needed for an establishment to come into compliance (or to verify compliance with the terms of granted variances). Issuance of willful, repeated and high gravity serious violations, failure to abate notifications, and/or citations related to imminent danger situations are examples of prime candidates for follow-up or monitoring inspections. These type of inspections will not normally be conducted when evidence of abatement is provided by the employer or employee representative(s).

   1. Failure to Abate.

      a. A failure to abate exists when a previously cited violation continues unabated and the abatement date has passed or the abatement date is covered under a settlement agreement, or the employer has not complied with interim measures within the allotted time specified in a long-term abatement plan.

      b. If previously cited items have not been corrected, a Notice of Failure to Abate Alleged Violation shall normally be issued. If a subsequent inspection indicates the condition has still not been abated, the RSOL shall be consulted for further guidance.

         NOTE: If the employer has demonstrated a good faith effort to comply, a late Petition for Modification of Abatement (PMA) may be considered in accordance with Chapter 7, Section III, Petition for Modification of Abatement (PMA).

3-23

      c.   If an originally cited violation has at one point been abated but subsequently recurs, a citation for a repeated violation may be appropriate.

   2.  <u>Reports</u>.

      a.   For any items found to be abated, a copy of the previous *Violation (OSHA-1B)*, *Violation (OSHA-1B-IH)*, or citation can be noted as "corrected", along with a brief explanation of the abatement measures taken. This information may be included in the narrative of the investigative file.

      b.   In the event that any item has not been abated, complete documentation shall be included on a *Violation (OSHA-1B)*.

   3.  <u>Follow-up Files</u>.

   Follow-up inspection reports shall be included with the original (parent) case file.

B.  <u>Construction Inspections</u>.

   1.  <u>Standards Applicability</u>.

   The standards published as <u>29 CFR Part 1926</u> have been adopted as occupational safety and health standards under <u>Section 6(a)</u> of the Act and <u>§1910.12</u>. They shall apply to every employment and place of employment of every employee engaged in construction work, including non-contract construction.

   2.  <u>Definition</u>.

   The term "construction work" as defined by <u>§1926.32(g)</u> means work for construction, alteration, and/or repair, including painting and decorating. These terms are also discussed in <u>§1926.13</u>. If any question arises as to whether an activity is deemed to be "construction" for purposes of the Act, the Director of the Directorate of Construction shall be consulted.

   3.  <u>Employer Worksite</u>.

      a.   Inspections of employers in the construction industry are not easily separable into distinct worksites. The worksite is generally the site where the construction is being performed (e.g., the building site, the dam site). Where the construction site extends over a large geographical area (e.g., road building), the entire job will be considered a single worksite. In cases when such large geographical areas overlap between Area Offices, generally only operations of the employer within the jurisdiction of any Area Office will be considered as the worksite of the employer.

      b.   When a construction worksite extends beyond a single Area Office and the CSHO believes that the inspection should be extended, the affected Area Directors shall consult with each other and take appropriate action.

   4.  <u>Upon Entering the Workplace</u>.

      a.   CSHOs shall ascertain whether there is a representative of a federal contracting agency at the worksite. If so, they shall contact the representative, advise him/her of the inspection and request that the representative attend the opening conference.

      b.   If the inspection is being conducted as a result of a complaint, a copy of the complaint should be given to the general contractor and any affected sub-contractors.

   5.  <u>Closing Conference</u>.

Case 2:19-mj-00119-DEJ   Filed 06/25/19   Page 101 of 102   Document 1

Upon completion of the inspection, the CSHO shall confer with the general contractor(s) and all appropriate subcontractors or their representatives, together or separately, and advise each one of all the apparent violations disclosed by the inspection to which each establishments employees were exposed, or violations which the employer created or controlled. Employee representatives participating in the inspection shall also be afforded the right to participate in the closing conference(s).

C. <u>Federal Agency Inspections</u>.

Policies and procedures for Federal agencies are to be the same as those followed in the private sector. See <u>Chapter 13</u>, Federal Agency Field Activities.